# CHARLESTON.

POST, ADM'R. *v.* CITY OF CLAKSBURG.

Submitted March 3, 1914.   Decided April 7, 1914.

1. MUNICIPAL CORPORATIONS—*Sidewalks—Public  Character—Recognition.*

   For the purposes of an action against a city for an injury alleged to have resulted from a defect in a sidewalk constructed along the side of a building and bordering on a public street, but on land belonging to the owner of the building, the sidewalk is sufficiently recognized as a public walk by the grant, by the city council, of a permit to the owners of the building to construct, maintain and

operate in such sidewalk an elevator in connection with their use of the building.   (p. 50).

2.   Same—*Sidewalks—Elevator.*

An elevator for lowering goods·from the sidewalk to a basement and lifting them from the basement to the sidewalk, so constructed as to leave no defect in the walk when lowered and not in operation, not dangerous to persons using the sidewalk as travelers when in operation and not left in such condition as to be dangerous to them when not in use, is not a public nuisance, an obstruction of the sidewalk nor a defect therein.   (p. 50).

3.   Same—*Elevator in Sidewalk—Personal Injuries—Contributory Negligence.*

A city is not liable for the death, by the operation of such an elevator, of a person who, while traveling on the sidewalk and seeing it in use and raised, projected a portion of his body under the upper part of it and was killed by its descent.   (p. 50).

4.   Same—*Sidewalks—Personal Injuries—Liability.*

The statute imposing absolute duty upon municipal corporations to keep their streets and sidewalks reasonably safe for use by the general public does not make them liable for injuries negligently inflicted, by persons lawfully using such public ways, upon one another.   (p. 53).

(Lynch, Judge, absent).

Error to Circuit Court, Harrison County.

Action by Howard B. F. Post, administrator, etc., against the City of Clarksburg.   Judgment for plaintiff, and defendant brings error.

*Reversed and Judgment Rendered.*

*Lafayette C. Crile* and *E. Bryan Templeman,* for plaintiff in error.

*J. E. Law,* for defendant in error.

Poffenbarger, Judge:

A somewhat novel question arises on this writ of error, namely, whether the city is liable for the death of a boy 11 years old, occasioned by his having projected his head and shoulders under the upper part of an elevator, operated by a hotel proprietor in a sidewalk alleged to have been a public one, so that in its descent, it caught and crushed him. A verdict for the defendant was set aside by the court as being

contrary to the law and the evidence and a new trial ordered.

The sidewalk in question, 7½ or 8 feet wide and running along the side of a hotel and bordering a public street, was used by the public generally, and the hotel company had applied to the city for permission to install and operate the elevator in it and obtained such permission, but the title to the land covered by the sidewalk seems to be in the hotel company and there is no proof of a formal dedication thereof to the city for sidewalk purposes nor of any other act of recognition thereof as a public sidewalk by the city authorities. The street as surveyed and originally accepted by the city did not cover the strip, but the hotel company made it a sidewalk. Practically, if not legally, it added the strip to the public way, which the city confessedly controls as a highway. Its application to the Council for the permit impliedly admitted the sidewalk was a public one in the true sense of the term, one under city control, and the grant of it carried an implied assertion of such character by the city. Very slight corporate recognition of a way so laid out and used by the public suffices, and it may be implied as well as express. *Campbell* v. *Elkins,* 58 W. Va. 308; *Parish* v. *Huntington,* 57 W. Va. 286; *Yates* v. *Grafton,* 33 W. Va. 507; *Boyd* v. *Woolwine,* 40 W. Va. 282; *Ball* v. *Cox,* 29 W. Va. 407. That the hotel company owns the fee and constructed and maintains the sidewalk signifies little or nothing, since nearly all owners of property abutting on streets do that and not infrequently set back their fences and buildings so as to widen the street, thereby adding to a thing controled by the city or town. The sidewalk is undoubtedly a public one for the purposes of actions of this class.

But liability on the part of the city does not necessarily follow. Municipal corporations are by no means liable for all injuries occurring on their streets. Others have rights in them and some times by their negligence inflict injuries for which the cities are not liable. If vehicles or persons lawfully using the streets injure one another by collision or otherwise, the question of liability is one between them only with which the city has nothing to do. If a pedestrian should wilfully throw his body under or in front of an automobile, carriage or wagon and suffer consequent injury, he would have no

right of recovery. If such a vehicle should negligently or wantonly run over him, he not being in fault, its owner or driver would be liable, not the city. Uses of highways other than travel or transportation thereon are lawful and, should one, in the exercise of such right, injure another otherwise than by making the highway unsafe, there is no reason or sound principle upon which the city can be held liable. An abutting owner has peculiar, limited, common law rights in highways, not enjoyed by others, with which statutes and city ordinances have not interfered. A merchant may load and unload goods back and forth between his store and trucks and other vehicles, across the sidewalk by means of skids or other suitable devices, provided such obstruction is temporary and reasonable. An abutting owner may temporarily deposit building materials in the street to a reasonable extent. He has a peculiar right of ingress and egress and others incidental to his ownership and occupancy of the abutting land. *Davis v. Spragg,* 72 W. Va. 672, 79 S. E. 652; McQuillen, Mun. Corp., vol. 3, sec. 1334 *et seq*; Dillon Mun. Corp., secs. 1178-9.

Though streets and sidewalks are public places, the public enjoyment thereof necessarily involves a limited right of temporary individual appropriation of the use thereof. Two vehicles, animals or persons cannot occupy the same space at the same time. So the right of the abutter to make a special, peculiar and temporary use of the sidewalk or street in front of his property is exclusive, for the time being, just as is the occupancy of a given portion of the highway by a pedestrian or teamster, and the two classes of rights are of the same general nature and consistent with the theory of control by the public authorities.

The elevator in question was an instrumentality owned by the hotel company and used in the exercise of its rights, as an abutting owner, of receiving into the basement of the hotel baggage and other articles from the street and sending the same forth from the basement. When not in actual use, it wrought no obstruction to the public enjoyment of the sidewalk nor any defect therein. When down its top was practically level with the sidewalk and constituted a safe and firm portion thereof. When it was raised to receive or discharge baggage or other articles, it appropriated for the pur-

pose so much of the sidewalk as it occupied, about one half in width, just as skids or the platform of a dray, used for handling such articles across the sidewalk, would have done. Its freight or burden rested on its floor. Raised, this floor was level with the sidewalk and the top several feet above it; lowered, the top was level with the walk and its floor at the bottom of the basement. Articles to be lifted were put on the floor of the elevator in the basement and brought up to the level of the walk; articles to be lowered, put on the same floor while level with the walk and then lowered. Between the posts on each side, there were two diagonal braces extending from corner to corner and forming an X, while the front, or side facing the street, was open. While it was being used to lower some articles which had been loaded from the sidewalk, plaintiff's decedent, a pedestrian on the sidewalk, out of youthful curiosity approached it, projected his head and shoulders under the top and was looking down when it descended and caught him. One witness says he was under the front of it, but his testimony on that point is rather uncertain and others are positive he was under the south side and had his head above the diagonal braces, in the upper section of the X. There was present at the time, a teamster or baggage wagon driver and a hotel bar porter whose duty it was presumably to superintend the operation of the elevator from the outside; and, had they or either of them been attentive, the misfortune would likely not have occurred.

The maintenance and operation of the elevator was not dangerous to any person in the mere exercise of his right on the street. While it was raised for the receipt or discharge of a load or burden, the portion of the sidewalk through which it extended was in legitimate use and constituted no part of the portion then available to a pedestrian, just as so much of a street occupied by one traveler, team or vehicle is, for the moment, unavailable to another. The fatal injury resulted not from the ordinary use of the sidewalk or any defect in it, but from the thoughtless act of the boy in projecting his head under the machine, as in the case of one putting himself under or in the way of a vehicle in the street or under a skid used in handling freight or a barrel rolled from a wagon over skids to a sidewalk or into the front door of a store.

Clearly the statutory duty of a municipal corporation to keep its streets reasonably safe for use, though absolute, *O'Hanlin* v. *Carter Oil Co.,* 54 W. Va. 510, *Chapman* v. *Milton,* 31 W. Va. 384, *Biggs* v. *Huntington,* 32 W. Va. 55, does not extend to the prevention of persons lawfully using the streets from injuring one another in the exercise of their rights. Had the elevator been so constructed or operated as to injure any person in passing over it, when not in use, or passing along the unoccupied portion of the sidewalk, while it was in operation, or had it been habitually left open in such manner as to constitute a defect in the sidewalk, likely to injure a person making ordinary use of it, and the plaintiff's decedent had met his death in consequence thereof, a very different question would have been presented, calling for a different conclusion.

It follows from these conclusions that the trial court erred in setting aside the verdict. The order setting it aside will, therefore, be reversed and annulled and judgment for the defendant rendered here on the verdict.

*Reversed and Rendered.*