No. 35,213

CARRIE E. DANIEL, *Appellant*, v. OTIS ELEVATOR COMPANY et al., *Appellees.*

(118 P. 2d 596)

294

Opinion filed November 8, 1941.

*Claude I. DePew, W. E. Stanley, Lawrence Weigand, William C. Hook, Sidney J. Brick, Lawrence Curfman* and *L. C. Gabbert,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, S. E. Bartlett, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover damages for injuries sustained by a passenger through the falling of an elevator in a department store. Defendant's demurrer to the plaintiff's evidence was sustained and she appeals.

Briefly stated, the petition charged that on October 14, 1939, the Allen W. Hinkel Company operated a store in Wichita, Kan., composed of several stories, and for the purpose of conveying customers from floor to floor, two elevators were used, and that on and before the above mentioned date the defendant Otis Elevator Company and its superintendent, the defendant Illgner, undertook for a consideration the duty of repairing and maintaining the elevators for the use and benefit of customers of the store, and that the defendants were in exclusive charge of the maintenance, repairs and mechanical safety of the elevators; that about 11 a. m. of October 14, 1939, plaintiff entered the north elevator on the fourth floor for the purpose of descending to the first floor; that when she entered the elevator the same was nearly filled with passengers, and after she entered the elevator was caused to descend by the operator thereof; that after it began descending it did not stop at any of the floors of the store but dropped or fell to the basement where it was caused to stop by striking the bottom of the shaft with great force and violence, causing injuries to the plaintiff, which need not now be noticed.

It was further alleged the elevator could not be controlled and the operator was unable to stop it prior to its reaching the basement, and that the elevator dropped solely by reason of the negligence of the defendants in that it was not properly repaired, was in a defective condition and unsafely maintained, and that plaintiff was unable to state more definitely, for the reason that she did not know and had no means of knowing the parts or portions of the elevator which were negligently allowed and permitted to be defective and out of repair; that the defective parts of the elevator were exclusively under the supervision and control of the defendants, and that if the elevator and its parts had been in safe and proper condition for the safety of plaintiff and other users, the elevator could have been stopped before striking the basement floor, and that her injuries were sustained solely by the negligent acts of commission or omission of the defendants.

Defendants' answer, so far as need be noticed, admitted operation of the store and that there were passenger elevators therein, and denied they were in exclusive charge of maintenance, repair and safety of the elevator, or that it was not properly repaired or safely maintained, or that its alleged fall was due to any carelessness or negligence of defendants, or that it had any defective parts or that it was exclusively under the supervision and control of the defendants at the time of the alleged fall. Plaintiff's reply need not be noticed.

At the opening of the trial defendants asked that plaintiff elect whether she relied upon grounds of specific negligence or sought recovery on the doctrine of *res ipsa loquitur*. Plaintiff's counsel stated the latter doctrine was being pursued. The court announced it would rule at the conclusion of the evidence.

In connection with her proof plaintiff offered in evidence a contract between the Otis Elevator Company signed on its behalf by the defendant Illgner and the Allen W. Hinkel Dry Goods Company. Briefly stated, this contract pertained to the elevators in the Hinkel store and provided the elevator company would regularly and systematically examine, adjust and lubricate as required, and if conditions warranted would replace or repair certain stated parts of the equipment, none of which is apparently involved here, and also that it would periodically examine all safety devices and governors and equalize the tension on all hoisting ropes, and would renew all wire ropes as often as necessary. There was also a specific provision that

nothing in the agreement should be construed to mean the elevator company assumed any liability on account of accidents to persons except those directly due to negligent acts or omissions of the elevator company and that the Hinkel company's responsibility for accidents to persons while on the elevators was in no way affected by the agreement.

Plaintiff, as a witness, testified that she entered the store about 10 to 10:30 a.m. and went to the fourth floor and came down on the north elevator; there were two elevators; she was going to the first floor; there was a basement below; she and one or two others got on; the elevator stopped at the third floor and a few more got on and the operator told others to wait for the next elevator. The elevator started down, and the first thing she knew she was in the basement, the elevator never stopped until it stopped with a bump in the basement. The remainder of her testimony concerns her own movements and the injuries she sustained, etc.

Orville Duvall testified that he was an employee of the Hinkel store and had been operating a freight elevator for five years; that there are two passenger elevators and before the accident he had operated them three or four or maybe five times and that the shift he operated them would be thirty minutes in the morning, two hours at noon and thirty minutes in the afternoon. On cross-examination he stated the first time he ran the passenger elevator was the day before the accident, and that he was operating the elevator when plaintiff was injured. He also stated on direct examination that the passenger elevators operate just opposite from the freight elevator as to handles. (It is not shown in the evidence as abstracted, but it is evident the handles referred to are on the device used to turn on and off the current operating the elevator.) There were seven floors, including the basement. He remembered stopping at the fourth floor, but did not remember plaintiff's getting on. He stopped at the third floor and remembered there were seventeen people on the elevator. He did not stop at the second floor. He threw the handle off, but the elevator did not stop. He put the handle in neutral where it should be; that puts the brake on and cuts off the power. He threw the handle in neutral and tried to stop at second just about two feet before he got to the second floor, the elevator "kind of shimmered and went on down." He tried to throw it ahead a couple of times, but it didn't do any good. He thought maybe letting the brake on would stop it. It quivered at the first floor, but didn't come

to a stop. The neutral was the brake and he didn't know of any other way to stop it. He thought maybe throwing it on and off would make the brake catch; it slowed up at the second floor, but landed at the basement. He helped the passengers off and operated it right back to the first floor. There was no cable loose. He saw no man from the elevator company there at the time, but did see one during the afternoon but did not know what he did. Witness could not say what caused the elevator not to stop, it was not anything he did that he knew of, he would say it slipped, the brakes didn't hold. The following from his cross-examination is noted only because of the redirect examination covering the same matter. The witness testified that after the elevator was unloaded in the basement, the engineer, apparently of the Hinkel company, came almost immediately and started him right up; that the engineer held the handle while witness pulled the rope that threw the switch on upstairs and that it wasn't over two or three minutes "until I was back on first operating it" and he continued to haul passengers the rest of the time he was on duty. (It may be said that the regular operator was not on duty and witness operated the elevator from about 10:30 to 11 a. m., and from noon to 2 p. m., of the day of the accident.) About four minutes after the accident witness was told he could have reversed the control, and if he had known that, he could have prevented the car from going down. He had never been instructed concerning that before. He was called on the job in more or less of an emergency and never had any instructions with reference to the particular elevator, and he had just learned himself the control was opposite from the freight elevator. Mr. Hinkel had directed him take the elevator that morning, no one from the elevator company. On redirect examination he testified that he did not reverse the control, that if he had it would have stopped the elevator. He didn't throw it in reverse because he didn't know that to reverse it would have shot it the other way if you held it down but if you reverse and bring the handle back it will stop the elevator. He was never taught that before the accident.

At the conclusion of the evidence the defendant Illgner moved for a dismissal for the reason there was no evidence of any character to constitute a cause of action against him. This motion was sustained.

The trial court had made no specific ruling on defendant's earlier motion to compel plaintiff to elect whether she relied on specific

negligence or on the doctrine of *res ipsa loquitur*, and that motion was renewed, whereupon plaintiff again stated she relied upon the doctrine. Thereafter the Elevator company demurred on the ground the evidence failed to show a cause of action. The trial court, in a short statement, remarked *inter alia* it was plain the accident was due to two things—overloading the elevator and an inexperienced operator, but concluded by sustaining the demurrer. Plaintiff perfected her appeal from that ruling.

In this court appellant makes some point the evidence does not warrant any conclusion the elevator was overloaded. We are of that opinion, but the question remains whether the evidence warrants application of the doctrine of *res ipsa loquitur*.

By reason of our conclusions hereafter set forth, we do not think it necessary to treat any distinctions there may be on account of the fact the present defendant was not in charge and control of the alleged defective elevator, nor is it necessary that a detailed review be made of our cases dealing with the doctrine of *res ipsa loquitur* and its application.

Perhaps the leading case in Kansas dealing with the doctrine is *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599, cited in the briefs of both parties. In that case the evidence showed that the plaintiff, then rightfully on a public street, and without fault or negligence on his part, was struck and injured by the glass globe which fell from an ornamental street light constructed and maintained by the defendant. Plaintiff was unable to show specific negligence. The doctrine of *res ipsa loquitur* was applied and under it plaintiff recovered. On appeal to this court the term was defined as follows:

"It is a term used in a limited class of negligence cases, referring to the method of proof of general negligence (as distinct from proof of specific negligent acts or omissions), by proving the injury, together with the accompanying circumstances, from which it may be inferred, and is reasonable to infer, that the casualty happened only because of some negligence of defendant." (l. c. 650.)

We need not repeat the review of cases there made showing applicability of the doctrine for the court's conclusions were well stated as follows:

"In actions for damages because of defendant's negligence, the negligence of defendant is never presumed, but must be established by proof. The cases in which *res ipsa loquitur* is applicable are no exceptions to this rule, but in such cases proof of negligence is made, if at all, by circumstantial evidence;

that is, the proof of the casualty and of the surrounding circumstances is such as to leave no reasonable conclusion to be drawn therefrom other than that the casualty happened because of the negligence of the defendant.

"In an action for damages because of negligence of defendant, when plaintiff has introduced evidence of defendant's negligence causing him injury, the defendant, to relieve itself from liability, is under the duty of producing evidence to offset or rebut that offered by plaintiff. This defendant may do by showing its own due care, even without showing the real cause of the accident, or by showing that the accident was caused by some third party, or by *vis major*. When evidence of this kind is offered by defendant, it is peculiarly the function of the jury to determine, from all the evidence concerning the question, whether the defendant was in fact negligent, and if such negligence was the proximate cause of the injury." (Syl. ¶¶ 2, 3.)

Appellant argues, however, that her proof showed that the elevator company was in exclusive control of the inspection, maintenance and repair of the elevator; that she did not attempt to prove any specific negligence, but did prove the elevator being operated in the usual and customary manner nevertheless fell, and defendant should have been compelled to prove there was an intervening cause over which the defendant had no control. The contention generally is answered by our decision in *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 58 P. 2d 77, where it was held:

"Where the accident or occurrence out of which the injury arises is such that direct evidence of negligence is not available, and the circumstances are such the accident would not have occurred except the defendant be at fault, the circumstances are permitted to be shown as making a prima facie case, under the rule of *res ipsa loquitur*.

"Where the plaintiff's evidence, after showing evidence as indicated in the preceding paragraph, goes further and shows an intervening cause, the rule of *res ipsa loquitur* no longer may be applied." (Syl. ¶¶ 2, 3.)

Without repeating the details thereof, the most that can be said as to the contract between the Hinkel company and the elevator company as to matters here involved is that the elevator company was under a duty to regularly and systematically examine and adjust the elevator, and to periodically examine all safety devices and governors and equalize the tension on all hoisting ropes. There is no provision whatever for control of operation of the elevator by the elevator company or for its liability for anything growing out of operation. The evidence showed that plaintiff received her injuries from the falling of the elevator, but we cannot say that the surrounding circumstances are such as to leave no reasonable conclusion to be drawn therefrom other than that the accident occurred because of the negligence of the defendant. And this is especially true where

the evidence not only did not disclose anything wrong with the elevator, which was immediately put back in service, but did disclose it was manned by an operator whose testimony disclosed he was inexperienced in handling the elevator, who was not advised as to its operation and who did not operate it properly and whose own testimony shows he speeded the car with the idea the brakes would hold when he turned off the power. Assuming the pleadings sufficient to warrant application of the doctrine of *res ipsa loquitur,* the plaintiff's evidence disclosed a situation where the doctrine has no application.

The ruling of the trial court is affirmed.