NANCY FRYE

v.

McCRORY STORES CORPORATION, *et al.*

(No. 10954)

Submitted January 20, 1959.    Decided March 3, 1959.

124

*R. W. Barnes, Pinsky & Mahan, McCamic & Tinker,* for plaintiff in error.

*Schmidt, Hugus, Laas & Schrader, Handlan, Garden, Matthews & Hess, Thomas B. Miller, George G. Bailey,* for defendants in error.

GIVEN, PRESIDENT:

Plaintiff, Nancy Frye, instituted her action of trespass on the case, in the Circuit Court of Ohio County, against McCrory Stores, Wheeling Electric Company, the City of

Wheeling, Jenevieve M. Taylor and William M. Sheff, for recovery of damages for personal injuries suffered by her as a result of an explosion alleged to have been caused by negligence of defendants. Before the case was submitted to the jury the trial court dismissed from the case all of defendants except the City of Wheeling, and limited questions of liability of the city to its operations in a proprietary capacity, as the operator of a water supply system. The jury returned a verdict in favor of the city, and the trial court refused to set the verdict aside. This Court granted a writ of error to the plaintiff.

On January 3, 1956, about 1:45 P.M., plaintiff, while walking on the sidewalk in front of the McCrory store, on Market Street in the City of Wheeling, suffered injuries from an explosion which originated in an underground room or vault, located partly under the sidewalk and partly under the McCrory store. The vault was approximately ten feet by fourteen feet, the ceiling thereof being approximately eight feet, eight inches high. The four walls were of solid masonry construction, but cracks or joint openings extended through the wall along and next to Market Street. The only access to the inside of the vault was through steel doors, installed in the sidewalk "flat and parted in the middle". A ventilator approximately one foot, five inches square was installed in the wall between the vault and the basement storeroom of the McCrory store, about one foot from the floor of the vault. No water drain was installed in the vault. The vault had existed in its then condition since about 1936, when extensive repairs or remodeling of the building housing the McCrory store was completed.

About the time of the remodeling, the water service line to the McCrory store, consisting of a lead pipe approximately one inch in diameter, extending from the main water line, near the center of Market Street, into or through the space within the vault, was abandoned and a line of steel pipe, about three inches in diameter, was substituted. Near the point where the lead service pipe connected to the water main, a shutoff valve was

installed. Another shutoff valve was installed on the lead service pipe some few feet before it entered the wall of the vault. Within the vault, apparently near the wall thereof located under the sidewalk, the lead service pipe was severed and "capped". There appears to be no question that the lead service pipe was capped, and the shutoff valve nearest the vault closed about the time of the remodeling and the substitution of the three inch service line. After the explosion it was determined that the shutoff valve nearest the water main was open, that the lead service pipe, a few feet from the wall of the vault, had become so weakened, perhaps by the force of electrolysis, that the pressure of the water within it caused a leak, thus permitting water under pressure from the main line to flow through the open shutoff valve, the abandoned lead service line, and into the vault, in considerable quantities, and, it is contended, onto the electrical installations within the vault. A pertinent provision of an ordinance of the City of Wheeling, in effect at the time material, provided that "Where it may be necessary to connect to the City's main pipe for any purpose (indicating repairs) the employes of the water works shall alone turn the valves on the main pipe, and they only shall make the opening in the main and insert the tee, spud or ferrule * * *". Provisions of another applicable ordinance provided that "Service connections will be made to improved property only and upon written application signed by the property owner or his duly authorized agent, except where new paving and similar conditions may require the laying of services in advance. The City will tap the main, insert corporation cock, carry service pipe to curb, insert a curb cock and curb box for each consumer; all of which shall be and remain the property of the City and will be maintained by the City."

About the time of the remodeling, at the request of the defendant McCrory Stores for an additional supply of electricity, the Wheeling Electric Company, operating under a general franchise with the City of Wheeling, and after obtaining a permit from the city, constructed an underground electric conduit from the base of the

pole carrying its primary line, a short distance from the McCrory store, to transformers in the vault. Apparently the permit made no mention of any installations within the vault. In connection with the installations and the furnishings of electric services, the electric company also installed within the vault three transformers of 2300 volt capacity each. Apparently the cables extending from the primary line to the transformers carried 6900 volts of electricity. An oil circuit breaker, sometimes referred to as an oil switch, was also installed in the vault. The oil breaker was a "safety device" and the "function of that is to protect the vault. If a fault occurs affecting the vault, the practical reason, that thing is open—particularly on short circuit". In other words, if a short occurred on the line, "between the store and the circuit breaker on the store side", the "oil switch" would be thrown out "automatically". But the circuit breaker "was no protection for the vault or anything on the line side of the circuit breaker". The capacity of the oil container of the circuit breaker was approximately four gallons, and the "oil serves as an insulating and cooling means for the switch". The type of oil breaker installed in the vault was not of the water proof or submersible type, but was of general use throughout the industry, and had operated satisfactorily from the time of its installation until the explosion.

There is evidence in the record to the effect that "standard operating procedure in the installation of service of that type, from a pole, would be to fuse the service where it goes off the main at a pole"; that there were no "fuses or cut-outs or any similar appliances" at the pole, or at any other point between the electrical substation and the vault, "on the circuit to McCrory's store". William J. Stewart, an experienced electrical engineer and assistant manager of the Wheeling Electric Company at the time of the explosion, was asked: "In other words, Mr. Stewart, on this circuit which we have talked about there is no fuse protection between the line side of that switch and the switch at your 15th Street substation? In other words, you have a direct wire with

no fuses that could blow from an overload until you go clear back to your main switch and that switch comes in automatically in ten seconds?" He answered: "That is correct". The evidence further indicates that had there been proper fusing at the pole or at some point before the circuits reached the transformers, electricity could not have again energized the circuits after the lights went off until the difficulty had been corrected. Since the jury was not permitted to consider any question as to the negligence of the Wheeling Electric Company, we need not detail the evidence which might be considered in conflict with that of plaintiff relating to the fusing of the circuits leading from the primary line to the transformers in the vault, that evidence not being conclusive as to the question.

On the morning of the explosion, about eight thirty or nine o'clock, an employee of McCrory discovered water in considerable quantities coming through the wall of the vault into the basement sale room of the store. The water department of the City of Wheeling was immediately notified and an experienced employee directed to the place of trouble. The employee continued his efforts to locate the source from which the water was flowing until the explosion occurred. He was within the McCrory building at the time of the explosion. Subsequent to the explosion, by openings made in the street, the source of the water was discovered, and the flow of water stopped upon the closing of the shutoff valve on the abandoned lead pipe nearest the main water line. There apparently can be no serious question that the water from the main line, flowing through the open valve and the break in the lead service line, flowed onto the oil circuit breaker installed in the vault and displaced the oil maintained therein for the purpose of insulation and for the purpose of prevention of an arc between the terminals therein. Neither does there appear to be any question that the electric lights in the McCrory store, and perhaps in other buildings in the vicinity supplied with electricity through the transformers maintained in the vault, went off for a very short period of time, perhaps ten seconds,

before the explosion but came back on immediately before the explosion. Other pertinent facts will be referred to in discussion of the particular questions to which they relate.

Though numerous questions are briefed, we think the only substantial questions required to be discussed on the present record relate to whether the maintaining of the vault under the sidewalk, or the maintaining of any instrumentality therein, constituted a nuisance per se, or whether negligence of defendants, or any of them, contributed proximately to the injury of plaintiff.

In 66 C.J.S., Nuisances, Section 9, it is stated: "The lawful and proper use of property or conduct of business does not ordinarily create an actionable nuisance, and is never a 'nuisance per se' in the strict sense of that term." Since the record in the instant case establishes that the vault under the public sidewalk wherein the explosion occurred was constructed and maintained pursuant to proper authority, its existence could not be regarded as a nuisance per se. Also, it seems clear that the use of the vault by the Wheeling Electric Company and by the city was by proper permit or authority, and the use thereof by either of them did not constitute a nuisance per se. See *Pope* v. *Edward M. Rude Carrier Corporation*, 138 W. Va. 218, 75 S. E. 2d 584.

It is strongly contended that the doctrine of res ipsa loquitur should apply to the facts in the instant case and that, by its application, primary negligence as to each of these defendants was established. We have concluded, however, that a determination of that question, as it relates to the facts in the instant case, need not be made, for the reason that the doctrine was not relied on by the plaintiff, she having proved the precise facts and circumstances relied on as constituting the negligence from which the injury is alleged to have been suffered. In that circumstance, the inference of negligence arising from the doctrine is no longer material. We need not, and do not, of course, intimate that no case may arise where facts giving rise to the inference are proved, and the

plaintiff also attempts to prove specific acts of negligence, both the inference and proof may be material in determining the existence of primary negligence. In *Waterbury* v. *Riss & Co.*, 169 Kan. 271, 219 P. 2d 673, 685, 686, the Court said: "The doctrine of *res ipsa loquitur* is not one of substantive law, but is one pertaining to evdience. Where it is relied upon alone it simply means that certain facts and circumstances raise an inference or presumption of liability. Generally speaking the rule is that when specific acts of negligence are brought into the case by the evidence the doctrine of *res ipsa loquitur* loses its force and the case must be determined upon the facts showing specific negligence. See, Daniel v. Otis Elevator Co., 154 Kan. 293, 118 P. 2d 596 * * *". In *Arnold* v. *Wood, et al.*, 173 Va. 18, 3 S. E. 2d 374, the Court held: "The doctrine of res ipsa loquitur applies only in the absence of evidence and when the cause of the accident is not explained." See *Stephens* v. *Virginia Electric & Power Co.*, 184 Va. 94, 34 S. E. 2d 374; *Seven-Up Bottling Co.* v. *Gretes*, 182 Va. 138, 27 S. E. 2d 925. For a late collation of cases applying the doctrine of res ipsa loquitur in this state see *Pope* v. *Edward M. Rude Carrier Corporation*, *supra*.

We are of the opinion that the trial court was correct in instructing the jury to return verdicts in favor of defendants Taylor and Sheff, the owners of the McCrory building, and the defendant McCrory Stores, tenant of the building, for the reason that no actionable negligence was established which was chargeable against them. They had no lawful control of that part of the vault constructed under the sidewalk, and could not have denied its use by the city, so long as such use did not constitute a nuisance or unreasonable obstruction of the sidewalk. Neither could those defendants have prevented the City of Wheeling from authorizing or permitting the use of the vault by the city in connection with the operation of its water system, or the use thereof by the Wheeling Electric Company. *Post* v. *City of Clarksburg*, 74 W. Va. 48, 81 S. E. 562, 52 L.R.A., N. S. 773. Moreover, the owners and tenant had no connection with, or duty or

control over, the appliances subsequently installed in the vault by the electric company, or by the city in connection with operation of its water system. Neither were they charged with, nor could they have anticipated, any negligence of the city, in its proprietary capacity, as to the operation of the shutoff valve at the water main, or by the electric company in the installation or maintenance of its appliances in the vault, or on its cables leading to the vault. See *Reese* v. *Lowry,* 140 W. Va. 772, 86 S. E. 2d 381; *Matthews* v. *Cumberland and Allegheny Gas Co.,* 138 W. Va. 639, 77 S. E. 2d 180; *State ex rel. Cox* v. *Sims, Auditor,* 138 W. Va. 482, 77 S. E. 2d 151; *Musser* v. *Norfolk and Western Railway Co.,* 122 W. Va. 365, 9 S. E. 2d 524; *Bell* v. *Huntington Development & Gas Co.,* 106 W. Va. 155, 145 S. E. 165; *Stuck* v. *Kanawha & Michigan Railway Co.,* 76 W. Va. 453, 86 S. E. 13.

A more serious question arises as to the action of the trial court in directing the jury to return a verdict in favor of the Wheeling Electric Company. Plaintiff contends that the negligence of the Wheeling Electric Company continued to, and contributed proximately to, the explosion which occurred in the vault, in that it installed and maintained therein an inferior type of oil circuit breaker, one not waterproofed or submersible, and in not installing and maintaining proper automatic cutoff devices or fusing on the electric cables which carried 6900 volts of electricity from its primary line to the transformers. While it is true that there is proof to the effect that a more modern, a submersible, type of circuit breaker is manufactured and used by the electrical industry in certain circumstances, we believe the trial court was justified in concluding that the proof did not establish prima facie negligence of the electric company in the installation or maintenance of the particular circuit breaker in question. In such circumstances, the industry is not required to install or maintain the most modern or the very safest and best appliance available for the service. Usually, the test is whether the appliance is one customarily used by the industry, and has proved satisfactory for the purpose intended. "* * *

This duty is discharged by the employment of the customary and approved devices and methods of construction, or insulation, and it is not necessarily negligence to fail to employ the most reliable and best appliances, although some cases lay down more stringent requirements * * *". 29 C.J.S., Electricity, Section 40. See *Soward* v. *American Car Co.*, 66 W. Va. 266, 66 S. E. 329; *Seldomridge* v. *Chesapeake & Ohio Railway Co.*, 46 W. Va. 569, 33 S. E. 293; *Snyder* v. *Wheeling Electric Co.*, 43 W. Va. 661, 666, 28 S. E. 733; *Berns* v. *Gaston Coal Co.*, 27 W. Va. 285, 55 Am. Rep. 304; *Murphy* v. *Central Kansas Electric Cooperative Association*, 178 Kan. 210, 284 P. 2d 591; *Lundy* v. *Southern Bell Telephone and Telegraph Co.*, 90 S. C. 25, 72 S. E. 558.

Considering the proof relating to the negligence of the Wheeling Electric Company as to the manner of the installation and maintaining of the particular type of oil circuit breaker, in the light of the authorities referred to, we think it insufficient to establish any negligence on the part of such defendant, or to warrant the submission of such question to the jury. The particular appliance had been in use since about 1936, was of the type used generally throughout the industry and had served the purpose intended without any apparent fault or failure. Moreover, the explosion was not occasioned by any fault or inadequacy of the oil circuit breaker, but by forces which overcame the effectiveness of its operation.

We are of the view, however, that the trial court was in error in directing the jury to return a verdict in favor of the Wheeling Electric Company, in that the jury was not permitted to consider the question of whether that defendant was guilty of actionable negligence as to the manner of the installation of defendant's underground cables from its primary line to the transformers in the vault, especially in respect to the necessity for and the absence of proper fusing or other safety devices on such cables. In considering the question of negligence of the defendant in that respect, we must keep in mind the highly dangerous character of cables carrying large volt-

age of electricity. "1. Those who operate and maintain wires charged with dangerous voltage of electricity are required to exercise a degree of care commensurate with the dangers to be reasonably apprehended therefrom; but they are not insurers against all injury therefrom." *Maggard* v. *Appalachian Electric Power Company*, 111 W. Va. 470, 163 S. E. 27. See *Van Leet* v. *Kilmer*, 252 N. Y. 454, 169 N. E. 644, Annotation 32 A.L.R. 2d 244, 265. As noted above, there was substantial evidence to the effect that the standard or usual procedure in the industry, as regards the fusing of such cables between the primary line and the transformers, was to install automatic cutoffs or fusing so as to prevent the re-energizing of the line, in the event of trouble thereon, until such trouble had been corrected, and it seems not to be questioned that no such appliance was installed prior to the explosion. In this circumstance, we think a jury question arose.

Plaintiff in error also complains of the action of the trial court in refusing to set aside the verdict returned in favor of the defendant City of Wheeling, in its proprietary capacity. From the evidence detailed above, we reach the conclusion that there was sufficient evidence of negligence on the part of the city, in connection with its operation of its water system, to permit the question of its negligence to go to the jury. It appears to be hardly questioned that water flowing under pressure, through the shutoff valve near the main water line, reached the circuit breaker and displaced the oil, permitting, or contributing to, the explosion. The sole responsibility for the operation of the valve, or at least the jury could have so found, rested on the city, as well as the responsibility for the faulty condition of the lead pipe leading into the vault, through which the water reached the circuit breaker. The court, however, over objection of the plaintiff and the City of Wheeling, directed the jury to return a verdict in favor of the Wheeling Electric Company, and submitted the case to the jury on questions involving only negligence of the city and on the theory that only negligence of the city could have constituted the proxi-

mate cause of the injury. In that circumstance, the jury was not permitted to consider concurrent negligence of the city and of Wheeling Electric Company.

In *Hartley* v. *Crede*, 140 W. Va. 133, 82 S. E. 2d 672, we held: "4. Concurrent negligence occurs when two or more persons are guilty of negligence and the negligence of each in point of time and place concurs and proximately causes or contributes to the injury of another person." See *Brewer* v. *Appalachian Constructors, Inc., et al.,* 135 W. Va. 739, 65 S. E. 2d 87. In the instant case, as disclosed by the evidence detailed above, the jury could have found that the negligence of the city, acting in its proprietary capacity, in permitting the water from its main to flow onto the circuit breaker concurred "in point of time and place" with the negligence of defendant Wheeling Electric Company in not having properly installed and maintained fusing or automatic cutoff devises on the cables leading from the primary line to the transformers, thus constituting the proximate cause of the explosion. By the action of the trial court in directing a verdict in favor of the Wheeling Electric Company the plaintiff was prejudiced, not alone as to her claim against the Wheeling Electric Company but also as to her claim against the city, in that her right of recovery was limited to the sole negligence of the city.

It is contended, however, that the defendants could not reasonably have anticipated the chain of events which "triggered" the explosion that resulted in injury to the plaintiff. In *State ex rel. Cox* v. *Sims, Auditor,* 138 W. Va. 482, 77 S. E. 2d 151, we held: "4. Negligence to be actionable must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Though foreseeability, reasonable anticipation of an injury, is of the very essence of actionable negligence, except where a violation of law is involved, the precise injury, or the precise chain of events leading to the injury, need not have been foreseeable or anticipated. "1. One who has committed a breach of duty is liable for its natural and

proximate effects, which may be immediate or through the subsequent media of natural forces or other innocent causes." *Mills* v. *Indemnity Insurance Company of North America,* 114 W. Va. 263, 171 S. E. 532. "Where an act or omission is negligent, it is not necessary to render it the proximate cause of injury that the person committing it could or might have foreseen the particular consequence or precise form of the injury, or the particular manner in which it occurred, or that it would occur to a particular person." 65 C.J.S., Negligence, Section 109 (b). See *Rouse* v. *Eagle Convex Glass Specialty Co.,* 122 W. Va. 671, 13 S. E. 2d 15, 132 A.L.R. 1421; *Blankenship* v. *City of Williamson,* 101, W. Va. 199, 132 S. E. 492; *Fields* v. *Director General of Railroads,* 86 W. Va. 707, 104 S. E. 767; *Houston* v. *Strickland,* 184 Va. 994, 37 S. E. 2d 64, 165 A.L.R. 537. Where the facts are not in dispute, and are such that reasonable minds could draw but one conclusion, the question of whether injury could have been anticipated becomes one of law for the court; but where the facts are in dispute or where different inferences may be reasonably drawn from such facts, the question is one for the jury. *Rouse* v. *Eagle Convex Glass Specialty Co., supra.*

The Wheeling Electric Company knew, or at least was charged with knowledge, that a dangerous explosion was likely to occur in the vault in the absence of installation and maintenance of proper fusing on its cables leading from its primary line into the vault, in the event of a short circuit or other difficulty on such cables. To prevent just such an occurrence, or, at least, the jury could have found, the industry customarily installed and maintained fusing in such circumstances as those involved here. This being true, we think it was not imperative, under the authorities cited, that plaintiff establish that the Wheeling Electric Company could have anticipated the precise chain of events which occasioned the explosion, or the precise injury which occurred. It can hardly be argued that the Wheeling Electric Company could not have anticipated injury to persons using the public sidewalk, in the event of such an explosion.

Prejudicial error is claimed and vigorous complaint is made as to the actions of the trial judge in unwarrantedly interfering with the orderly procedure of the trial, in repeatedly stating his personal views as to controverted questions of fact, and in stating his personal views as to the weight of evidence and credibility and incredibility of witnesses. We are of the view, however, that no useful purpose could be served by discussion of such contentions, since error, if any, is not likely to occur in the event of a new trial.

It necessarily follows that the order of the Circuit Court of Ohio County complained of must be affirmed insofar as it relates to the dismissal of defendants McCrory Stores Corporation, Jenevieve M. Taylor and William M. Sheff, and in limiting the liability of the City of Wheeling to its actions in its proprietary capacity; that such order of the court be reversed insofar as it relates to the dismissal of the Wheeling Electric Company; that the verdict of the jury in favor of the City of Wheeling, and the verdict of the jury in favor of the Wheeling Electric Company, be set aside, and plaintiff awarded a new trial against the City of Wheeling, in its proprietary capacity, and against the Wheeling Electric Company; that the plaintiff recover her costs incurred herein against the City of Wheeling and the Wheeling Electric Company; and that the case be remanded to the Circuit Court of Ohio County.

*Affirmed in part; reversed in part; verdicts set aside; new trial awarded; case remanded.*