490 S.E.2d 56

Erna K. HUDNALL, Administratrix of
the Estate of Gary A. Hudnall,
Plaintiff Below, Appellant,

v.

MATE CREEK TRUCKING, INC., a West
Virginia Corporation, and Catenary
Coal Company, a Delaware Corporation
doing business in the State of West Vir-
ginia, Defendants Below, Appellees.

No. 23885.

Supreme Court of Appeals of
West Virginia.

Submitted April 29, 1997.

Decided July 7, 1997.

James R. Cagle, Nicholas W. Johnson, Charleston, for the Appellant.

Daniel R. Schuda, Ancil G. Ramey, Steptoe & Johnson, Charleston, for Catenary Coal Company.

PER CURIAM:

Appellant Erna Hudnall, as administratrix of her husband's estate raises the limited issue of whether the Circuit Court of Kanawha County erred in refusing to give a "value of a chance" jury instruction in a trucking accident case that resulted in a partial defense verdict. Under the facts of this case, we do not find the lower court's rejection of the Appellant's instruction to have been error. The lower court's decision is affirmed.

Appellant's husband, Gary Hudnall, was killed while driving a coal truck down a haul-age road in Campbell's Creek, West Virginia, on April 23, 1993. Appellant initiated a wrongful death action pursuant to West Virginia Code § 55-7-6 (1994) against her husband's employer, Little Joe Trucking, Inc.; Mate Creek Trucking, Inc. ("Mate Creek");[1] and Catenary Coal Company ("Catenary").[2] At the time of the accident, Mr. Hudnall was driving a loaded coal truck down a steeply graded haul road at Catenary's facility when the vehicle's brakes failed. The truck slammed into a coal stockpile, burying the cab of the truck and killing Mr. Hudnall.

Federal and state investigations revealed that the brakes on the truck being driven by Mr. Hudnall had been equipped with the wrong size brake chambers, thereby reducing the braking capacity of the vehicle.[3] At trial, Appellant introduced evidence regarding the lack of any standardized warning signs regarding the road's steep gradation[4] and the lack of any runaway escape ramps. Appellant argued additionally that Catenary's installation of concrete barriers on one side of the road near the bottom and across the intersection from the coal stockpile contributed to the accident's occurrence.

The case proceeded to trial against only Mate Creek and Catenary, as the circuit court had granted summary judgment in favor of Little Joe Trucking, Inc.[5] The jury found Mate Creek to be 57 percent negligent and Mr. Hudnall to be 43 percent negligent. Although the jury concluded on its jury verdict form that Catenary had been negligent with respect to Mr. Hudnall's death, they determined that Catenary's negligence was not a proximate cause of his death. The jury awarded damages in the amount of $198,715.[6]

---

1. Gary Hudnall's employer, Little Joe Trucking, Inc., was operating in a joint venture with Mate Creek Trucking, Inc.

2. Mr. Hudnall was working at the Catenary facility pursuant to a contractual arrangement between Catenary and Mate Creek that required Mate Creek to provide trucks and drivers for coal haulage at Catenary's Campbell Creek surface facility.

3. While the manufacturer's specifications required size 36 brake chambers, the brakes on the truck's tandem wheels had size 30 chambers.

4. At points, the haulage road had a grade in excess of 17% with an overall average gradation of 14%.

5. The circuit court dismissed Little Joe Trucking, Inc. after determining that Appellant had failed to establish the requisite elements for a deliberate intent action under this state's workers' compensation laws.

6. Although the amount of damages awarded suggests that a claim for inadequate damages might have been made, it does not appear that Appellant raised this issue below. Nor was there an assignment of error in the petition filed here.

Catenary is the only defendant that Appellant includes as the subject of this appeal.[7]

■ The sole issue that Appellant raises for this Court's consideration is whether the circuit court erred in refusing[8] to instruct the jury regarding the "value of a chance" theory. We first adopted the "value of a chance" doctrine in *Thornton v. CAMC*, 172 W.Va. 360, 305 S.E.2d 316 (1983), when we held in syllabus point five that:

> Where a plaintiff in a malpractice case has demonstrated that a defendant's acts or omissions have increased the risk of harm to the plaintiff and that such increased risk of harm was a substantial factor in bringing about the ultimate injury to the plaintiff, then the defendant is liable for such ultimate injury.

We explained the rationale behind this theory:

> The general purpose of such an instruction is to further elaborate the proximate cause theory in medical malpractice. Such an instruction is generally used in situations where the injured plaintiff claims that his original injury was aggravated, causing him to suffer greater harm, as a result of his doctor's failure to render appropriate medical care.

*Id.* at 367, 305 S.E.2d at 323.

Just as in this case, the plaintiff in *Thornton* challenged the trial court's failure to give a "value of the chance" instruction. 172 W.Va. at 366, 305 S.E.2d at 323. Upholding the trial court because of the instruction's improper wording, we proceeded to discuss how the "value of a chance" theory centers on the issue of causation:

> [T]he plaintiff's theory was that his original leg injury had been improperly treated and as a result the injury was aggravated to the extent amputation was necessary. The defendant doctor's theory was that the original injury was so severe that amputation would have resulted regardless of the efficacy of his treatment. The "value of a chance" label comes about because the plaintiff argues that the doctor's negligence eliminated the chance of his right leg healing properly, thus proximately causing the amputation. *The issue, however, is still one of causation*—did the doctor's actions or inactions increase the risk of amputating the plaintiff's right leg and was this increase in the risk of harm a substantial factor in the amputation of the plaintiff's leg?

*Id.* at 367, 305 S.E.2d at 323 (emphasis supplied).

■ Citing *Lohse v. Faultner*, 176 Ariz. 253, 860 P.2d 1306 (App.1992), Appellant suggests that the "value of a chance" theory should be extended to non-medical cases.[9] The court in *Lohse*, specifically noted that the Arizona Supreme Court "did not purport to limit its rule [regarding 'value of a chance'] to malpractice cases." 860 P.2d at 1315. This Court, however, expressly limited the "value of a chance" theory to malpractice cases. *See Thornton*, 172 W.Va. at 368, 305 S.E.2d at 324 and Syl. Pt. 5 (conditioning applicability of "value of a chance" theory to situations involving "a plaintiff in a malpractice case"). The other cases cited by Appellant in support of her theory that "value of a chance" should apply in this case are similarly distinguishable.[10] While we do not rule

---

7. Appellant's controversy with Mate Creek was extinguished by payment in full of its assessed damages.

8. Because Appellant chose to proceed pursuant to Rule 4A of the Rules of Appellate Procedure, we are without a transcript from the trial below. Thus, while Appellant states that the circuit court's basis for denying the proffered instruction was its conclusion that the "value of a chance" rule does not apply to non-medical malpractice cases, we are without a record from which to have the benefit of the lower court's reasoning.

9. Each of our cases subsequent to *Thornton* applying the "value of a chance" doctrine have involved medical malpractice. *See Shia v. Chvasta*, 180 W.Va. 510, 377 S.E.2d 644 (1988); *Catlett v. MacQueen*, 180 W.Va. 6, 375 S.E.2d 184 (1988); *Reager v. Anderson*, 179 W.Va. 691, 371 S.E.2d 619 (1988).

10. The Fourth Circuit's decision in *Gardner v. National Bulk Carriers, Inc.*, 310 F.2d 284 (1962), *cert. denied*, 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721 (1963), is a failure to rescue case decided under the Jones Act, 46 U.S.C.App. § 688, that pertains to liability arising from accidents at sea. Liability was established based on the failure to search for an overboard seaman

out the possibility that the "value of a chance" doctrine could be utilized in an appropriate non-medical malpractice case, we do not believe that the facts of this case warrant a modification of our holding in *Thornton* at this time.

The Washington Supreme Court in *Herskovits v. Group Health Co–Op.*, 99 Wash.2d 609, 664 P.2d 474 (1983), explained the difference between an ordinary tort case involving traditional negligence principles and one that warrants the giving of a "value of a chance" instruction:

> The *Hamil* court [*Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (Pa.1978)] distinguished the facts of that case from the general tort case in which a plaintiff alleges that a defendant's act or omission set in motion a force which resulted in harm. In the typical tort case, the "but for" test, requiring proof that damages or death probably would not have occurred "but for" the negligent conduct of the defendant, is appropriate. In *Hamil* and the instant case, however, the defendant's act or omission failed in a *duty* to protect against harm from *another source*. Thus, ... the fact finder is put in the position of having to consider not only what *did* occur, but also what *might have* occurred.... [O]nce a plaintiff has demonstrated that the defendant's acts or omissions have increased the risk of harm to another, such evidence furnishes a basis for the jury to make a determination as to whether such increased risk was in turn a substantial factor in bringing about the resultant harm.

which destroyed the reasonable possibility of rescue. 310 F.2d at 287. Contrary to Appellant's representation that the Fourth Circuit has applied the "value of a chance" to non-medical malpractice cases, the decision she cites as support for this contention similarly involves a failed rescue attempt at sea. *See Harris v. Pennsylvania R.R. Co.*, 50 F.2d 866 (4th Cir.1931).

The "value of a chance" theory has its origin "in the rescuer context where one who had undertaken to rescue the plaintiff failed to exercise reasonable care in performing the rescue." Darrell L. Keith, *Loss of Chance: A Modern Proportional Approach to Damages in Texas*, 44 Baylor L.Rev. 759, 765 (1992) (footnote omitted). This

664 P.2d at 477; *see generally* John D. Hodson, Annotation, *Medical Malpractice: "Loss of Chance" Causality*, 54 A.L.R.4th 10 (1987 & 1996 Supp.).

The facts of the instant case present a textbook paradigm of concurrent negligence principles.[11] Appellant's theory of the case was that the combination of bad brakes, attributable to Mate Creek, and the steeply graded haulage road that lacked warning signs or escape ramps, attributable to Catenary, caused the death of Mr. Hudnall. Whereas a typical "value of a chance" case involves either a preexisting injury or risk, *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 471 (Okla.1987), neither of these scenarios are present in this case. Instead, the instant allegations involve acts of negligence that could have conceivably operated in concurrent fashion to result in the trucking accident.

This Court noted recently in *Wehner v. Weinstein*, 191 W.Va. 149, 444 S.E.2d 27 (1994), that "[w]e have long recognized the doctrine of concurrent negligence...." *Id.* at 155, 444 S.E.2d at 33. Concurrent negligence permits liability to be assigned to more than one person or entity where it can be shown that separate acts of negligence contributed to the injury:

> " 'Where separate and distinct negligent acts of two or more persons continue unbroken to the instant of an injury, contributing directly and immediately thereto and constituting the efficient cause thereof, such acts constitute the sole proximate cause of the injury.' Point 1, Syllabus, *Brewer v. Appalachian Constructors, Inc., et al.*, 135 W.Va. 739 [65 S.E.2d 87 (1951),

theory was also applied to situations in which there was a failure to attempt a rescue. *Id.* While the failure to rescue cases are clearly non-medical malpractice cases, they do not provide a basis for extending the principles adopted in *Thornton* beyond malpractice situations because the rescue cases predate the recognition by this Court, and other tribunals, of the "value of a chance" doctrine. *See id.* at 767 (commenting that "value of a chance" doctrine was first recognized in 1983 by Washington Supreme Court in *Herskovits v. Group Health Co–Op.*, 99 Wash.2d 609, 664 P.2d 474 (1983)).

**11.** In her appellate brief, Appellant describes her case as one involving concurrent negligence.

*overruled on other grounds, Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978) ]." Syllabus Point 6, *Frye v. McCrory Stores Corp.,* 144 W.Va. 123, 107 S.E.2d 378 (1959).

" ' "In a concurrent negligence case, the negligence of the defendant need not be the sole cause of the injury, it being sufficient that it was one of the efficient causes thereof, without which the injury would not have resulted; but it must appear that the negligence of the person sought to be charged was responsible for at least one of the causes resulting in the injury." Syllabus point 5, *Long v. City of Weirton,* [158 W.Va. 741], 214 S.E.2d 832 (1975).' Syllabus Point 6, *Burdette v. Maust Coal & Coke Corp.,* 159 W.Va. 335, 222 S.E.2d 293 (1976)."

Syl. Pts. 5, 6, *Wehner,* 191 W.Va. at 151–52, 444 S.E.2d at 29. The facts of this case fit squarely into the principles of concurrent negligence discussed in *Wehner,* as Appellant's theory of the case was that both the negligence of Mate Creek with regard to the wrong-size brake chambers and the dangerous conditions of the road combined to create the conditions that resulted in Mr. Hudnall's death.

Appellant argues that the trial court's failure to give her proposed instruction 13,[12] prevented her from arguing her theory of the case to the jury. While we do not have the benefit of a transcript,[13] Appellant does not dispute that she was permitted to argue her theory of bad brakes, lack of warning signs, dangerous road gradation, and the existence of the concrete barriers to the jury. Moreover, she admitted at oral argument that the proffered "value of a chance" instruction was not rejected until after closing arguments. Thus, the jury was fully apprised as to Appellant's theory of the case. Furthermore,

the verdict form provided the jury with the opportunity to assess negligence against each defendant. The jury decided, however, that Catenary's negligence was not a proximate cause of Mr. Hudnall's death.

Appellant represents that the following instructions were given to the jury:[14]

The Court instructs the jury that the Plaintiff contends that each of the Defendants in this case is guilty of negligence which proximately caused the death of Gary A. Hudnall. The plaintiff and each Defendant is entitled to your separate considerations of the acts and omissions alleged.

Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances; or doing what such a person under the existing circumstances would not have done.

Negligence may be established by proving by a preponderance of the evidence that the Defendant failed to conform to the requirements of a safety law or an industry custom or standard. A violation or departure from a safety law, custom or standard constitutes negligence.

The essential elements of liability for negligence are the existence of a duty, an injury and some causal connection between the negligence and the injury or damages complained of.

A person who creates a risk of foreseeable harm to another is under a duty to exercise reasonable care to prevent the threatened harm. Anyone who does an affirmative act is under a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm. Moreover, duty may arise from a statute, from a contract, from sup-

---

**12.** The proposed instruction stated, in pertinent part:

To constitute proximate cause, the negligence should to some degree or in some way contribute proximately and not remotely to the injury or death for which recovery is sought. A Plaintiff need not exclude every possible explanation for the injury or death and the fact that some other cause concurs with the negligence of the Defendant in producing an injury or death does not relieve the Defendant from liability unless the Defendant can show that such other cause would have produced the injury or

death independently of his negligence. Thus, when the Plaintiff proves that a Defendant's acts or omissions have increased the risk of harm and that such increased risk of harm was a substantial factor in bringing about the death of Plaintiff's decedent, then the Defendant is liable for such death.

**13.** *See supra* note 8.

**14.** Appellee does not dispute that these instructions were given at trial.

plying an item of property which is to be used for business purposes, or by inviting another onto a business premises to perform work.

The jury is instructed that a proximate cause of injury is a cause which, in natural and continuous sequence, produces foreseeable injury and without which the injury would not have occurred.

From these instructions it is clear that the jury was clearly provided with correct statements of the law that would have permitted the jury, had they determined that the evidence supported it, to reach a verdict that assessed liability against Catenary. The only logical conclusion regarding the verdict is that the jury determined, in spite of finding Catenary negligent with regard to the road and the surrounding conditions, that such negligence was not a proximate cause of the accident. From the limited record before us, we cannot conclude that Appellant was hampered in presenting her theory of the case by the trial court's failure to give a "value of the chance" instruction. She clearly argued that the steeply-graded road and the lack of warning regarding its gradation were a proximate cause of the accident. The jury simply chose to disbelieve her.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.