Jenkins *v.* Pennsylvania Railroad Company, Appellant.

456

Argued December 13, 1971. Before Wright, P. J.,
Watkins, Montgomery, Jacobs, Hoffman, Spaulding,
and Cercone, JJ.

*Richard L. Goerwitz, Jr.,* with him *Swartz, Campbell & Detweiler,* for appellant.

*Jeffrey M. Stopford,* with him *James E. Beasley,* and *Beasley, Hewson, Casey, Kraft & Colleran,* for appellee.

Opinion by Spaulding, J., March 24, 1972:

This is an appeal from a jury verdict of $51,328.25 damages against appellant under the Wrongful Death and Survival Acts of the Commonwealth of Pennsylvania, following a trial before Judge Joseph E. Gold

of the Court of Common Pleas of Philadelphia County. The appellee is the administratrix of her deceased son's estate. Motions for a new trial and to amend judgment were denied by a divided court en banc, consisting of the trial judge, Judge Stanley M. GREENBERG and Judge James R. CAVANAUGH who dissented. Judgment was entered upon the verdict and this appeal followed.

Decedent was a retarded 15 year old boy. He died several hours after being hit by one of appellant's trains on July 23, 1964. The jury's determination of the negligence of appellant's engineman is not contested on this appeal. Further, of the total verdict returned in both actions, appellant does not challenge the $5,000.00 under the Survival Act awarded for pain and suffering nor $5828.25 of the $7328.25 awarded in the Wrongful Death action. Appellant does attack the remaining $40,500.00 of the verdict as being excessive and inconsistent with the charge of the court. Appellant also asserts as error, the admission of certain evidence and the court's refusal of two particular points for charge.

At the time of his death the decedent was classified as retarded educable, with a mental age of 7½ years. His intelligence quotient was 55. Appellee produced expert testimony indicating that during his life expectancy decedent would have been capable of limited learning and obtaining employment in any of a number of manual jobs which normally developed persons usually find tedious. In recent years employers have become increasingly more receptive to the idea of hiring the retarded for such work. There was additional testimony of the probable remuneration decedent would have received in such positions.

The measure of damages in death cases was established in Pennsylvania by *Murray v. Philadelphia Transportation Co.,* 359 Pa. 69, 74, 58 A. 2d 323 (1948),

458

holding: "In cases under the Survival Act of 1937, supra, the jury should be directed to ascertain what the earnings of the deceased person would have been during the period of his life expectancy and to deduct from them the probable cost of his maintenance as shown by the evidence and to reduce the amount to its present worth." The opinion further indicates that reduction to present worth is accomplished by using "simple interest at the legal rate: Windle v. Davis, 275 Pa. 23, 29, 118 A. 503." *Murray,* supra, at n. 7. This rule has been applied with approval. *Gregorius v. Safeway Steel Scaffolds Co.,* 409 Pa. 578, 187 A. 2d 646 (1963); *Brodie v. Philadelphia Transportation Co.,* 415 Pa. 296, 203 A. 2d 657 (1964).

Despite the *Murray* rule, verdicts in death cases requiring a determination of net earnings and the application of the "present worth rule" have often been unreasonable, illogical, and unfair.[1] In order to assist the jury in determining the present value of future damages determined to be due, expert testimony including the use of accepted actuarial tables is now permitted. *Brodie,* supra, at 301-303.[2] In the instant case appellant produced the only witness (an actuary) to testify on the application of the "present worth rule." "He testified as to two concepts of the reduction of a sum

---

[1] *Brodie,* supra, at 301-302 notes that: "Trial judges and lawyers freely admit that the application of the 'present worth rule' is beyond the understanding and capabilities of most lay persons serving on juries. . . . In some jurisdictions in the United States, the courts simply ignore the rule as hopelessly difficult for the jury to follow." [Citations omitted.]

[2] We recognize that such evidence is not conclusive but merely serves to assist the jury in their calculations and that there are many factual determinations which they must make before such expert testimony is even helpful. However, because the only testimony as to the "present worth rule" is presented via an expert, the jury is not justified in completely disregarding the application of the rule where its use is mandated.

of money to present worth: (1) as to the amount of money to be invested in the bank now which untouched would produce a specific sum at the end of a set period of years, and (2) the reduction to present worth of a sum to be paid continuously throughout a period of years." (R. 270a) Despite this testimony the jury's confusion remained and they requested additional instructions on the doctrine of present worth from the trial judge after they had already deliberated for some time. At that time, he submitted to the jury the following interrogatories; their answers thereto being the dollar amounts indicated:

"Interrogatories to the Jury

(R. 229a)

IN THE EVENT THAT YOUR FINDING IS FOR THE PLAINTIFF YOU MAY RETURN TWO VERDICTS AS FOLLOWS:

I. SURVIVAL (Estate)

(Here insert the total of the earnings per year after age 21 which the jury decides the decedent would have earned for his work expectancy keeping in mind that his age expectancy is 49.7 years) ....................... $140,800

Deduct therefrom the probable cost of his future maintenance for the same period ...................... $ 74,800

Net earnings ................. $ 66,000

Net earnings reduced to present worth ....................... $ 39,000 [*]

Pain and suffering .............. $ 5,000

TOTAL VERDICT ..... $ 44,000

II. WRONGFUL DEATH (Family)

(The earnings which the decedent would have had for a period of three years from age 18 to 21) .......... $ 9,600

Deduct therefrom the probable cost
of his maintenance by his parents .. $    5,100

Net earnings ................ $    4,500

Contributions to his parents to age 21 $    1,500

Value of service to his parents to age
21 ............................... $      0

Hospital bill .................... $      609.25

Funeral bill .................... $      719.00

TOTAL VERDICT ..... $    7,328.25

TOTAL ............ $ 51,328.25"

The crux of this case is the jury's determination of the present worth of decedent's net earnings (asterisked [*] dollar amount), which appellant argues is excessive and inconsistent with the charge of the court.

The controlling rule of law here is stated in *Swartz v. Smokowitz*, 400 Pa. 109, 161 A. 2d 330 (1960), quoting Justice KEPHART in *Brown v. Quaker City Cab Co.*, 274 Pa. 289, 117 A. 681 (1922) : " 'Where the evidence shows no justification for the award made, and it is so clearly beyond reason as to lead to the conclusion the amount must have been reached as a result of some misconception of law or evidence, if not partiality, prejudice, or sympathy,—whatever the impelling motive,—if, under the circumstances, it is so out of proportion to the damages proven as to make necessary its being set aside as excessive, it will be so ordered.' " [Citation omitted.] The Court in *Swartz* further found that a new trial limited to damages was warranted because the amount of the verdict supported the trial judge's conclusion that "the jury did not apply the present worth rule, and that its enormous verdict . . . was the result of a misconception of the law or of prejudice, partiality, or sympathy". 400 Pa. at 117.

The jury here determined, by its answers to the trial judge's interrogatories, that decedent would have had

net earnings of $66,000.00. As noted above, testimony as to how to reduce this figure to present worth indicated two methods by which this calculation could be made. Under the first method the present net worth would amount to .0575 or approximately $4000.00. Utilizing the second method, the award would be substantially higher, to allow for continuous periodic payments, but still not in excess of $25,000.00. It is therefore apparent that the jury's calculation and award of $39,-000.00 in the survival action is excessive and indicates that the jury did not apply the present worth rule, either as a result of misconceiving the law or due to sympathy for decedent's family.[3]

Reversed and remanded for a new trial limited to the issue of damages.

_____

[3] Since appellant prevails on this issue we do not reach its other contentions.