417 S.E.2d 925

**Vickie C. HARRIS, Administratrix of the Estate of Troy W. Harris, Plaintiff Below, Appellant,**

v.

**MATHERLY MACHINERY, INC. Defendant Below, Appellee.**

No. 20214.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided May 15, 1992.

---

James A. McKowen, Hunt & Wilson, Charleston, for appellant.

Lawrence Morhous, Brewster, Morhous, and Cameron, Bluefield, for appellee.

PER CURIAM:

The plaintiff, Vickie C. Harris, Administratrix of the Estate of Troy W. Harris, appeals from a final order of the Circuit Court of Raleigh County, dated November 29, 1990, denying her motion for a new trial. On appeal, the plaintiff contends that the jury was given an erroneous instruction which had the effect of directing a verdict in favor of the defendant, Matherly Machinery, Inc., if the jury found that the decedent, Troy Harris, had been warned of the existence and location of overhead power lines. We agree that the instruction was erroneous, and that the circuit court committed reversible error.

On October 13, 1986, the decedent was employed as a truck driver for Brownie's, Inc. The defendant had contracted Brownie's, Inc. to transport a crane from Indianapolis, Indiana, to Flat Top, West Virginia. Mr. Harris was given the driving assignment by Brownie's, Inc. and delivered one-half of the crane to defendant's premises. Decedent arrived with another employee of Brownie's, Inc., Robert Richmond, who was to operate a boom by which the crane would be unloaded from decedent's truck.

Prior to unloading the crane, decedent and Mr. Richmond were given instructions by defendant's employees where to unload the crane. Two employees of defendant were to aid Mr. Richmond once he had removed the crane from decedent's tractor-trailer. The evidence is ambiguous and in dispute as to how specific the instructions where to place the crane were, and who was ultimately responsible for those instructions. In any event, it is uncontested that there were electric power lines in the general area where decedent and Mr. Richmond were instructed to unload the crane.

Once Mr. Richmond had removed the crane from decedent's truck, decedent drove his truck from the immediate area, parked it, and returned. At that stage a decision was reached to move the crane a short distance from its initial resting place, because it was edging into defendant's driveway. The decedent attempted to guide the crane to its new resting place, but as the load was released, he was electrocuted. No one saw whether the boom actually came in contact with the power lines, or whether the electricity arced to the boom. At trial, there was testimony that the decedent knew the power lines were close to the boom. There was no testimony that the wires were concealed or were anything other than in plain view. There was nothing in the record to indicate how familiar decedent was with the peril of working near power lines with a boom.

At trial, the plaintiff presented expert testimony suggesting that the defendant should have provided men to watch the

power lines, that the defendant could have provided safety equipment to the decedent, and the defendant could have asked the power company to deenergize or insulate the lines before the work commenced. The evidence was in dispute as to whether an alternative unloading area was available.[1]

The plaintiff also presented the expert testimony of Daniel Selby, C.P.A., who opined that the present value of economic loss to the Harris family due to decedent's death was a gross amount of $403,098.00.[2] Earlier in the proceedings the circuit court granted a motion in limine made by the defendant, ruling that any damages awarded for the future income of the decedent must include a deduction for the amount the decedent would have personally consumed had he lived. Plaintiff objected to this ruling. Mr. Selby deducted 30% from the gross total and concluded that the net loss to the beneficiaries was $282,169.00.

■ Defendant contends that because plaintiff asserted that defendant had failed to warn the decedent of the existence of the power lines in her complaint, and followed up on that assertion during examination of witnesses and closing argument at trial, that instruction number 11 was therefore proper. The defendant offered and was granted instruction number 11 based upon syllabus point 2 of *Jones v. Appalachian Power Co.*, 145 W.Va. 478, 115 S.E.2d 129 (1960):

> The owner or occupant of land, who has contracted with an independent contractor to construct a road across such land, is not liable for the death of an employee of such independent contractor, caused when the boom of a crane came into contact with an uninsulated, 2300 volt electric wire 32 feet above the ground, where the employees of such independent contractor had been warned of the presence of such wires and the wires were in plain view.

The defendant's instruction number 11 reads:

> You are also instructed that the owner of land such as defendant Matherly Machinery Service, Inc., who has contracted with an independent company to deliver equipment to its land is not liable for the death of an employee of such independent company caused when the boom of a crane owned by that independent company and operated by an employee of that company comes into contact with an electric wire in excess of 30 feet above the ground where the employees of such independent company, including Troy W. Harris, have been warned of the presence of such wires and those wires were in plain view.

Defendant's instruction number 11 is couched in mandatory, or binding language. The instruction states that if decedent was warned of the presence of the wires and those wires were in plain view, then defendant "is not liable."[3] However, it is abundantly clear from the plaintiff's complaint[4] and the evidence and testimony

---

1. The first half of the crane was unloaded a day or two prior to the electrocution incident. By all accounts, this unloading occurred behind defendant's establishment where no power lines were present. During that unloading (decedent was not present, but Mr. Richmond was), the yard of the private residence of the owner of Matherly Machinery, Inc., was damaged. Several employees of defendant testified that room was available in that same area to unload the second half of the crane and they expected it to be unloaded there. The owner of Matherly Machinery, Inc. testified there was no available space in the rear of the establishment.

2. Mr. Selby testified that there were two potential scenarios—one with a gross amount of $481,875.00 and the other containing a gross amount of $403,098.00. Mr. Selby opined that the lower amount was the more probable.

3. Defendant contends that the instruction is not binding, but gives no argument or analysis to support that contention. Defendant does not contend that syllabus point 2 of *Jones* excludes consideration of any other theory of negligence when a "failure to warn" is alleged. Such an argument would be without merit.

4. Defendant argues that because plaintiff's complaint contains an allegation that the defendant failed to warn the decedent of the dangers of the power lines, that, therefore, defendant's instruction number eleven is appropriate. We are compelled to note that plaintiff's complaint clearly asserts other theories of negligence, including permitting an unsafe condition to exist, failing to correct an unsafe condition, failing to properly maintain the premises, and failure to adequately oversee operations.

offered through her expert, that plaintiff was offering more than this one theory of possible negligence on the part of defendant.[5] Yet defendant's instruction number 11 limited the jury's consideration to the lone issue of whether defendant had breached its duty to warn.

■ It has been a longstanding rule in this jurisdiction that a binding instruction must be complete in and of itself and cannot neglect evidence of other theories asserted by a party. We recently reiterated the general rule with regard to binding instructions in *Pino v. Szuch,* 185 W.Va. 476, 480–81, 408 S.E.2d 55, 59–60 (1991). We stated:

We discussed at some length in *Bragg v. C.I. Whitten Transfer Co.,* 125 W.Va. [722] at 727, 26 S.E.2d [217] at 220 [ (1943) ], the general rule with regard to a binding instruction:

'Plaintiff's Instruction No. 6 directed the jury to find a verdict for the plaintiff if certain hypothetical facts were believed—in common parlance, it was a binding instruction. "It has been repeatedly held that it is improper for the court, in instructing a jury, to single out certain facts and instruct the jury, that if. they are true, they must find for either of the parties in accordance with such facts, when there are other facts or evidence in the case bearing on the subject." *Storrs v. Feick,* 24 W.Va. 606, 613 [ (1884) ]'

We further explained in *Bragg* that a defective binding instruction cannot be cured by reference to other instructions: 'In other words, a binding instruction should be so drawn as to need no aid or supplement from another. Resort to other instructions to supply the necessary factual premise for the authorized conclusion generally results in confusing

and misleading the jury.' 125 W.Va. at 728, 26 S.E.2d at 221.

■ In syllabus point 3 of *Nesbitt v. Flaccus,* 149 W.Va. 65, 138 S.E.2d 859 (1964), we stated:

A binding instruction which directs the jury to find for a party if it believes that certain facts therein enumerated are established by the evidence must not omit any fact essential to such finding, and such instruction must be complete in itself and c̈an not be supplemented by other instructions given.

■ In this case, defendant's instruction number 11 was erroneously binding and therefore could not be cured by any other instruction or by viewing the instructions as a whole. We noted the traditional rule regarding the impact of an erroneous instruction in syllabus point 6 of *Pino:*

' "An erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudiced by such instruction." Point 2, syllabus, *Hollen v. Linger,* 151 W.Va. 255 [151 S.E.2d 330 (1966) ].' Syllabus Point 5, *Yates v. Mancari,* 153 W.Va. 350, 168 S.E.2d 746 (1969).

The plaintiff was prejudiced by defendant's instruction number 11 because her alternate theories of negligence, for which she offered evidence, were excluded.

In sum, the plaintiff offered evidence of negligence on the part of the defendant, and based her case on several theories of negligence. It was error for the circuit court to issue a binding instruction to the jury directing them to find for the defendant if they determined that the defendant was not negligent in its duty to warn the decedent of the existence of the power lines when other theories of negligence were asserted.

---

5. At trial the plaintiff was granted an instruction based upon syllabus point 2 of *Sanders v. Georgia Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976):

The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent contractor the duty of providing him with a reasonably safe place in

which to work and has the further duty to exercise ordinary care for the safety of such persons.

Plaintiff was asserting that defendant had not provided a reasonably safe place to work, a separate theory of negligence from the assertion that defendant had failed to warn decedent of the power lines.

Plaintiff lists a second assignment of error, that being the circuit court's ruling that any damages for future wages of the decedent must be reduced to reflect the decedent's future consumption. We need not address that issue to reach a decision in this case.[6]

Based upon the foregoing, the judgment of the Circuit Court of Raleigh County is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

**6.** Whether or not *W. Va. Code,* 55–7–6(c)(1)(B)(i) requires an offset or deduction for the personal living expenses of a decedent is a complex, multi-faceted issue. Because this argument was not adequately briefed by the parties, and our prior case law is not determinative, we decline to address this issue at this time.