444 S.E.2d 27

William E. WEHNER, Jr., Administrator of the Estate of Jennifer Wehner; Nicole Fisher; and Jessica Landau, Plaintiffs Below, Appellees

v.

Brett Barry WEINSTEIN; Mark Weinstein; Associated Hearing Instruments of King of Prussia, Inc.; Bossio Enterprises, Inc., DBA Mario's Pizza; Sigma Phi Epsilon, a National Fraternal Organization and Association; Sigma Phi Epsilon Building Association, Inc., a Corporation; and the West Virginia University Board of Trustees, a Corporation, Defendants Below, Appellees,

Matthew Kiser, Defendant
Below, Appellant.

William E. WEHNER, Jr., Administrator of the Estate of Jennifer Wehner; Nicole Fisher; and Jessica Landau, Plaintiffs Below, Appellees

v.

Brett Barry WEINSTEIN; Mark Weinstein; Associated Hearing Instruments of King of Prussia, Inc.; Bossio Enterprises, Inc., DBA Mario's Pizza; Matthew Kiser; Sigma Phi Epsilon, a National Fraternal Organization and Association; and the West Virginia University Board of Trustees, a Corporation, Defendants Below, Appellees,

Sigma Phi Epsilon Building Association, Inc., a Corporation, Defendant Below, Appellant.

William E. WEHNER, Jr., Administrator of the Estate of Jennifer Wehner; Nicole Fisher; and Jessica Landau, Plaintiffs Below, Appellees

v.

Brett Barry WEINSTEIN; Mark Weinstein; Associated Hearing Instruments of King of Prussia, Inc.; Bossio Enterprises, Inc., DBA Mario's Pizza; Mat-
thew Kiser; Sigma Phi Epsilon Building Association, Inc., a Corporation; and the West Virginia University Board of Trustees, a Corporation, Defendants Below, Appellees,

Sigma Phi Epsilon, a National Fraternal Organization and Association, Defendant Below, Appellant.

William E. WEHNER, Jr., Administrator of the Estate of Jennifer Wehner; Nicole Fisher; and Jessica Landau, Plaintiffs Below, Appellees,

v.

Brett Barry WEINSTEIN; Mark Weinstein; Associated Hearing Instruments of King of Prussia, Inc.; Matthew Kiser; Sigma Phi Epsilon Building Association, Inc., a Corporation; Sigma Phi Epsilon, a National Fraternal Organization and Association; and the West Virginia University Board of Trustees, a Corporation, Defendants Below, Appellees,

Bossio Enterprises, Inc., dba Mario's Pizza, Defendant Below, Appellant.

Nos. 21911 to 21914.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 25, 1994.

Decided April 20, 1994.

Marvin W. Masters, Paula L. Wilson, Masters & Taylor, Charleston, Thomas W. Pettit, Vinson, Meck, Pettit & Colburn Huntington, for appellees William E. Wehner, Jr., Adm'r, and Nicole Fisher.

Susan S. Brewer, Laurie L. Crytser, Steptoe & Johnson, Morgantown, for appellant Sigma Phi Epsilon.

Phillip C. Petty, Elisabeth H. Rose, Rose, Padden & Petty, Fairmont, for appellant Sigma Phi Epsilon Bldg. Ass'n, Inc.

James A. McKowen, Hunt, Lees, Farrell & Kessler, Charleston, for amicus curiae WV Trial Lawyers Ass'n.

Mark E. Gaydos, Wilson, Frame & Metheney, Morgantown, for appellee, Jessica Landau.

David J. Straface, Angotti & Straface, Morgantown, Avrum Levicoff, Douglas L. Price, Anstandig, Levicoff & McDyer, Pittsburgh, PA, for appellant, Bossio Enterprises, Inc., dba Mario's Pizza.

Richard W. Gallagher, Jeffrey A. Kimble, Robinson & McElwee, Clarksburg, P. Brennan Hart, Timothy R. Smith, Marshall, Dennehey, Warner, Coleman & Goggin, Pittsburgh, PA, for appellant Matthew Kiser.

MILLER, Justice:

These appeals are brought by the defendants in three civil actions that were consolidated for trial in the Circuit Court of Monongalia County. The plaintiffs are the administrator of the estate of Jennifer Wehner, who was killed when she was struck on a public sidewalk by a runaway pizza delivery car, and Nicole Fisher and Jessica Landau, who were injured in the same accident. The decedent and the two individual plaintiffs were students at West Virginia University. The jury returned verdicts against all the defendants [1] and awarded $1,978,623 to the Wehner estate; $132,090.25 to Nicole Fisher; and $87,158.85 to Jessica Landau.

Brett Barry Weinstein, a defendant below and a member of the Sigma Phi Epsilon Fraternity (Fraternity), does not appeal the adverse jury verdict which found him to be 75 percent at fault. Shortly before the accident, Mr. Weinstein was at the Fraternity and was attempting to leave in his car, but was blocked by a pizza delivery car. In order to move the delivery car, Mr. Weinstein opened the car's door, released its hand brake, and placed the gear shift in neutral. He was assisted by the defendant Matthew Kiser, who was a pledge of the Fraternity. The jury found Mr. Kiser to be 5 percent at fault.

The delivery car was owned by Bossio Enterprises, Inc., dba Mario's Pizza, and was being driven by David Turner, who was delivering an order to an individual at the Fraternity. The jury found Mr. Turner was negligent in the manner he parked the vehicle, and it found Mario's Pizza, as the employer, to be 10 percent at fault.

The Fraternity was sued on the theory that it failed to supervise and control the actions of Mr. Weinstein and Mr. Kiser. The jury found Mr. Kiser to be negligent and also found him to be an agent of the Fraternity, thus making it vicariously liable. The Fraternity was found to be 5 percent at fault.

The Sigma Phi Epsilon Building Association, Inc., (Association), another defendant below, owns the real estate on which the Fraternity is located. The Association was sued on the basis that the premises were dangerous because of its location on a steep hill, that it failed to provide proper warnings for traffic entering and leaving the property, and that it did not supervise and control the actions of Mr. Weinstein and Mr. Kiser. The Association was found to be 5 percent at fault.

The defendants, except for Mr. Weinstein, each claim that as a matter of law, they should be found not liable. Each claim a common error as to the damages awarded in the wrongful death action. They assert that the damages should have been reduced by the reasonable value of the anticipated personal consumption expenses of the decedent throughout her normal life expectancy. We begin by discussing the liability of each defendant.

## I.

### Liability of Mario's Pizza

Mario's Pizza argues it was not reasonably foreseeable that after the car was parked with the brake on and the ignition key removed, that someone would enter the car, disengage the brake, put the car in neutral, and cause it to roll.[2] Our general law surrounding proximate cause is contained in Syllabus Points 11 and 17 of *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990):

"11. '"To be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury." Syl. Pt. 3, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954).' Syllabus Point 4, *Haddox v. Suburban Lanes, Inc.*, 176 W.Va. 744, 349 S.E.2d 910 (1986)."

---

1. Associated Hearing Instruments of King of Prussia, Inc., Mark Weinstein, and the West Virginia University Board of Trustees were dismissed as defendants prior to trial.

2. Mario's Pizza recognizes that if its driver, David Turner, is negligent, then as the employer it is liable under the doctrine of respondeat superior. *See* Syllabus Point 3, *Musgrove v. Hickory Inn, Inc.*, 168 W.Va. 65, 281 S.E.2d 499 (1981).

"17. ' "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 1, *Ratlief v. Yokum*, [167 W.Va. 779], 280 S.E.2d 584 (W.Va.1981), *quoting*, syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).' Syllabus Point 6, *McAllister v. Weirton Hosp. Co.*, 173 W.Va. 75, 312 S.E.2d 738 (1983)."

■ We believe there was sufficient evidence of proximate cause. The delivery car driver, Mr. Turner, had delivered pizza to the fraternity house on other occasions, and was familiar with the topography. He was aware that there was a parking lot adjacent to the house and used it on other occasions. However, this time, rather than park in the lot, he parked his vehicle against the normal traffic flow and blocked the driveway to the house.

Mr. Turner also knew the area where he parked was immediately adjacent to the steep sloping driveway. The area below the driveway contained many student-housing facilities. If the car moved from where Mr. Turner parked it, it would roll down the hill injuring any one of the students who frequently used the streets and adjacent sidewalks below the fraternity.

Mr. Turner also acknowledged that a number of students lived in the fraternity house and used the driveway that he blocked. He also was aware that parked vehicles had been tampered with in this area. He knew that he would be going inside the house to deliver the order and that the car doors were not locked and access could be gained to the interior of the car. Moreover, he was aware that the car had a standard transmission which could be shifted by the clutch pedal without a key in the ignition.

With these facts in mind, we believe it was for the jury to determine whether it was reasonably foreseeable under the circumstances that some person would attempt to move the vehicle to gain access to the driveway. The jurors could realize from their common knowledge the impetuous nature of

college students and their tendency to act without mature consideration. This situation is no more extreme than the employer we found to be liable under proximate cause principles in *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983). There, an employee who made several requests to leave finally was permitted to do so after he had worked some twenty-seven hours. While driving home, he fell asleep and ran into another vehicle injuring the plaintiffs. Suit was brought against the employer. We held it was reasonably foreseeable that such an event could occur under all the circumstances.

In *Reese v. Lowry*, 140 W.Va. 772, 86 S.E.2d 381 (1955), *overruled on other grounds, Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), the defendants asserted a proximate cause argument contending that any defect in the furnace they installed did not cause the fire destroying the plaintiffs' house. Rather, the defendants contend the direct proximate cause was the owner's negligence in placing too much coal in the furnace knowing that the thermostat and furnace drafts were not working. We declined to hold as a matter of law that proximate cause did not exist and concluded it was a jury question.

What Mario's Pizza actually is arguing is not so much a foreseeability issue, but a claim that the actions of Mr. Weinstein and Mr. Kiser in releasing the hand brake, placing the car in neutral, and attempting to move it were independent or intervening causes of the accident. Mario's Pizza does not assert it was without any negligence, and, indeed, on this record, it could not. By utilizing what amounts to an intervening cause argument, it seeks to escape liability.

■ We have identified what is meant by an intervening cause in Syllabus Point 1 of *Perry v. Melton*, 171 W.Va. 397, 299 S.E.2d 8 (1982):

" 'An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it

only, the proximate cause of the injury.' Syllabus Point 16, *Lester v. Rose*, 147 W.Va. 575, 130 S.E.2d 80 (1963) [*modified on other grounds, State ex rel. Sutton v. Spillers*, 181 W.Va. 376, 382 S.E.2d 570 (1989)]."

However, as this syllabus point indicates, an intervening cause must operate independently of any other act. We do not believe in this case that this test can be met. The location of the delivery car blocking ingress and egress coupled with its close proximity to the steep driveway and the car's accessibility are all circumstances resulting from Mr. Turner's actions that contributed to cause the ultimate accident. It is the combination of negligent acts that is the hallmark of concurrent negligence.

We long have recognized the doctrine of concurrent negligence and this case bears some analogy to *Frye v. McCrory Stores Corp.*, 144 W.Va. 123, 107 S.E.2d 378 (1959). There the plaintiff who was walking on a sidewalk was injured by an explosion in a vault under the sidewalk. The vault housed electrical equipment owned by Wheeling Electric Company. The explosion was caused by water coming into the vault and contacting the electrical equipment. The water came from a broken underground water line owned by the City of Wheeling.

■ Wheeling Electric argued that even if its electrical equipment was defective, it could not have reasonably anticipated the breaking of the water line and the subsequent entry of water into the vault. The city also made a similar proximate cause argument stating that it could not have reasonably foreseen that its defective water line would cause water to flow into the vault which would then explode. We made this statement as to proximate cause:

" 'Where an act or omission is negligent, it is not necessary to render it the proximate cause of injury that the person committing it could or might have foreseen the particular consequence or precise form of the injury, or the particular manner in which it occurred, or that it would occur to a particular person.' 65 C.J.S. *Negligence* § 109(b). *See Rouse v. Eagle Convex Glass Specialty Co.*, 122 W.Va. 671, 13 S.E.2d 15, 132 A.L.R. 1421 [(1940), *overruled on other grounds, Haynes v. City of Nitro*, 161 W.Va. 230, 240 S.E.2d 544 (1977)]; *Blankenship v. City of Williamson*, 101 W.Va. 199, 132 S.E. 492 [(1926)]; *Fields v. Director General of Railroads*, 86 W.Va. 707, 104 S.E. 767 [(1920)]; *Houston v. Strickland*, 184 Va. 994, 37 S.E.2d 64, 165 A.L.R. 537 [(1946)]." 144 W.Va. at 135, 107 S.E.2d at 386.

■ In *McCrory*, we concluded that both parties were guilty of concurrent negligence, stating in Syllabus Point 6:

" 'Where separate and distinct negligent acts of two or more persons continue unbroken to the instant of an injury, contributing directly and immediately thereto and constituting the efficient cause thereof, such acts constitute the sole proximate cause of the injury.' Point 1, Syllabus, *Brewer v. Appalachian Constructors, Inc., et al.*, 135 W.Va. 739 [65 S.E.2d 87 (1951), *overruled on other grounds, Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978)]."

■ Moreover, we generally have held that liability may attach so long as the negligence of a tortfeasor contributes in any degree to the injury. As we stated in Syllabus Point 2 of *Peak v. Ratliff*, 185 W.Va. 548, 408 S.E.2d 300 (1991):

" ' "In a concurrent negligence case, the negligence of the defendant need not be the sole cause of the injury, it being sufficient that it was one of the efficient causes thereof, without which the injury would not have resulted; but it must appear that the negligence of the person sought to be charged was responsible for at least one of the causes resulting in the injury." *Syllabus* point 5, *Long v. City of Weirton*, [158 W.Va. 741], 214 S.E.2d 832 (1975).' Syllabus Point 6, *Burdette v. Maust Coal & Coke Corp.*, 159 W.Va. 335, 222 S.E.2d 293 (1976)."

Consequently, we conclude that the trial court committed no error in refusing to direct a verdict for Mario's Pizza.

## II.

### *Liability of Matthew Kiser*

■ Although Mr. Kiser argues that there was insufficient evidence to establish negligence on his part, we find otherwise. We begin with several general legal principles. One relates to determining whether there is sufficient evidence to support a jury verdict and is contained in Syllabus Point 3 of *Powell v. Wyoming Cablevision, Inc.*, 184 W.Va. 700, 403 S.E.2d 717 (1991):

> " 'In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.' Syllabus Point 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984)."

■ Another firmly established point is that proof of negligence can be established by circumstantial as well as direct evidence. As we explained in Syllabus Point 2 of *Burgess v. Jefferson*, 162 W.Va. 1, 245 S.E.2d 626 (1978):

> " 'The burden is upon the plaintiff to establish a *prima facie* case of negligence against the defendant in order to warrant jury consideration but such showing may be made by circumstantial as well as direct evidence.' Point 2 Syllabus, *Smith v. Edward M. Rude Carrier Corp.*, 151 W.Va. 322, 151 S.E.2d 738 (1966). [ (Emphasis added).]"

■ Despite some conflicting testimony, we believe that the jury who viewed the area where the delivery car was parked could have found Mr. Kiser negligent. There was direct evidence that Mr. Weinstein asked Mr. Kiser to help him move the vehicle which was blocking the driveway. Mr. Weinstein asked Mr. Kiser to push the vehicle which Mr. Kiser did. The car was parked on a level area. Mr. Weinstein disengaged the brake, placed the vehicle in neutral, and then left the car. The vehicle did not move at this point. Mr. Kiser was standing in front of the car and was unaware that Mr. Weinstein had disengaged the brake and gears. The car did not start to roll until several seconds later. Mr. Weinstein did not push the car after he got out of it. However, Mr. Kiser was close enough to the car to have pushed it. The investigating officer stated that if the car was parked beyond a certain point, it would not have rolled without outside force.

From all of this, the jury could have concluded that Mr. Kiser pushed the car which caused it to begin its fatal path down the hill even though Mr. Kiser denied pushing it after Mr. Weinstein exited the vehicle. We find the trial court correctly denied Mr. Kiser's motion for a directed verdict.

## III.

### *Liability of Fraternity and Association*

The jury found that the Fraternity and the Association were each 5 percent liable to the plaintiffs. On the verdict form, the jury marked that it found by a preponderance of the evidence that Mr. Kiser was acting both as an agent of the Fraternity and the Association. The jury also marked that the Fraternity and the Association were guilty of direct negligence and the proximate cause of the accident in spite of any vicarious liability created by an agency relationship, and that the Fraternity and the Association were involved in a joint venture. We disagree and find that neither the Fraternity nor the Association can be held liable.

■ In assessing the jury's conclusions, we follow our standard of review as set forth in Syllabus Point 5 of *Starr v. State Farm Fire and Casualty Co.*, 188 W.Va. 313, 423 S.E.2d 922 (1992):

> " ' "When, upon the trial of a case, the evidence decidedly preponderates against the verdict of a jury or the finding of a trial court upon the evidence, this Court will, upon review, reverse the judgment; and, if the case was tried by the court in lieu of a jury, this Court will make such finding and render such judgment on the

evidence as the trial court should have made and rendered." Syllabus Point 9, *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W.Va. 622, 142 S.E.2d 898 (1965).' Syllabus Point 5, *Estate of Bayliss v. Lee*, 173 W.Va. 299, 315 S.E.2d 406 (1984)."

After reviewing the trial transcripts provided to this Court in the present case, we find that the evidence decidedly preponderates against the jury's conclusion that the Fraternity and the Association were directly negligent and the proximate cause of the accident, or that they are vicariously liable for the acts of their alleged agent, Mr. Kiser.

First, the plaintiffs primarily assert that it was established at trial that the Fraternity and the Association were responsible for the fraternity grounds and were directly negligent for failing to post signs at the fraternity designating visitor, tenant, and no parking areas. According to the plaintiffs, this lack of signs created a dangerous situation which ultimately resulted in this tragic accident.

As to their primary negligence, the lack of signs and warnings around the fraternity house, this case bears some resemblance to *Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65 (1950). In *Webb*, the decedent was killed in an automobile which was parked on a public road adjacent to an airport. Suit was brought against the pilot of the plane and the airport. The negligence established against the airport was that it had been constructed too close to the highway and in violation of Federal Aviation regulations. We concluded that the pilot's negligence in striking the car was the sole negligence and that the negligent condition of the airport was not a proximate cause, stating in Syllabus Point 4 of *Webb:*

> "In this jurisdiction there is a clear distinction between the proximate cause of an injury and the condition or occasion of the injury."

*See also Perry v. Melton*, 171 W.Va. 397, 299 S.E.2d 8 (1982).

Here, the lack of signs and warnings was but a passive or static condition of the premises. It had nothing to do with the intervening acts of negligence of the other defendants in allowing the parked vehicle to begin moving down the hill which caused one death and injured two others. This situation is different than *Costoplos v. Piedmont Aviation, Inc.*, 184 W.Va. 72, 399 S.E.2d 654 (1990), where Piedmont worked on the plane's magneto when it serviced the plane. A short time later, the plane crashed on take off killing a passenger. Piedmont sought to avoid liability by claiming the pilot's negligence in attempting to take off when he was experiencing a drop in the engine power was an intervening cause. However, there was testimony that the defective magneto could have caused the power loss. Thus, we concluded there was concurrent negligence and Syllabus Point 1 of *Perry v. Melton, supra,* did not apply.

The second ground of negligence was that the jury found Mr. Kiser to be an agent of the Fraternity and the Association. The plaintiffs claim that the Fraternity exercised control over Mr. Kiser by virtue of Mr. Kiser being a pledge to the Fraternity. In addition, Mr. Kiser acted as an agent of the Association because as a pledge he was responsible on occasion for cleaning the fraternity house.

In determining whether an agency relationship existed between Mr. Kiser and the Fraternity or the Association, we look to Syllabus Point 3 of *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994), where we stated: "One of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." We find insufficient evidence in the record establishing that either the Fraternity or the Association exercised control over Mr. Kiser's activities when Mr. Weinstein requested his assistance. On the night of the accident, Mr. Kiser was cleaning the fraternity house as a part of his pledge duties. It was not a part of his responsibility to the Fraternity or the Association to help move cars. The fact that there was an informal practice whereby a pledge would be asked to do kitchen or other cleaning or assist members of the Fraternity does not legally bind either the Fraternity or the Association to Mr. Kiser's actions. Even though Mr. Weinstein yelled for a "pledge"

to help him and did not specify an individual by name, Mr. Kiser's response and subsequent actions were not a part of his responsibilities to the Fraternity or the Association.[3] Therefore, we find that Mr. Kiser's actions were independent of both organizations and he was not acting as their agent.

## IV.

### *Wrongful Death Damages*

The defendants urge us to adopt a rule that in a wrongful death action where future loss of earnings is claimed, there be an offset for the decedent's personal living expenses. In this case, the trial court refused to accept this principle although urged to do so by the defendants.

The parties recognize that in note 6 of *Harris v. Matherly Machinery, Inc.*, 187 W.Va. 234, 417 S.E.2d 925 (1992), we declined to address the issue.[4] Consequently, this issue is a matter of first impression. The Washington Supreme Court in *Hinzman v. Palmanteer*, 81 Wash.2d 327, 332–33, 501 P.2d 1228, 1232 (1972), made this general summary of the law:

"Three theories have been developed for measuring the lost earning capacity of a decedent.... (1) The probable worth of the decedent's future net earnings had he lived to his normal life expectancy. Personal expenses are deducted from gross earnings to reach the net.... (2) The present worth of decedent's probable future savings had he lived to a normal life expectancy. Probable personal and family expenditures are both subtracted from probable gross earnings.... (3) The present worth of decedent's future gross earnings. No expenses are deducted from the award computed." (Citations omitted).

The Washington court adopted the first theory by deducting the decedent's personal living expenses.

We recognize the defendants' claim that a majority of state courts that have considered the question allow a deduction for the decedent's personal consumption expenses.[5]

---

**3.** The lack of any negligence resulting from Mr. Kiser's actions and the fact that we found no premise liability on the part of the Association results in no basis for finding joint venture liability.

**4.** Note 6 of *Harris*, 187 W.Va. at 238, 417 S.E.2d at 929, states:

"Whether or not *W.Va.Code*, 55–7–6(c)(1)(B)(i) requires an offset or deduction for the personal living expenses of a decedent is a complex, multi-faceted issue. Because this argument was not adequately briefed by the parties, and our prior case law is not determinative, we decline to address this issue at this time."

**5.** Defendants cite the following cases. *Kulawik v. ERA Jet Alaska*, 820 P.2d 627 (Alaska 1991); *Air Florida, Inc. v. Hobbs*, 477 So.2d 40 (Fla.Dist. Ct.App.1985); *Lorenz v. Air Illinois, Inc.*, 168 Ill.App.3d 1060, 119 Ill.Dec. 493, 522 N.E.2d 1352 (1988); *Iowa–Des Moines Nat'l Bank v. Schwerman Trucking Co.*, 288 N.W.2d 198 (Iowa 1980), *overruled on other grounds, Weitl v. Moes*, 311 N.W.2d 259, 265 (Iowa 1981), *Weitl,* *overruled, Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R. Co.*, 335 N.W.2d 148, 152 (1983); *Miller v. State Farm Mut. Auto. Ins. Co.*, 410 Mich. 538, 302 N.W.2d 537 (1981); *Louisville & N.R. Co. v. Garnett*, 129 Miss. 795, 93 So. 241 (1922); *Pitman v. Merriman*, 80 N.H. 295, 117 A. 18 (1922); *Tenore v. Nu Car Carriers, Inc.*, 67 N.J. 466, 341 A.2d 613 (1975); *Wilson v. Wylie*, 86 N.M. 9, 518 P.2d 1213 (N.M.Ct.App.1973), *cert. denied*, 86 N.M. 5, 518 P.2d 1209 (1974); *Carter v. Railroad*, 139 N.C. 499, 52 S.E. 642 (1905); *Jenkins v. Pennsylvania R.R. Co.*, 220 Pa.Super. 455, 289 A.2d 166 (1972); *Flagtwet v. Smith*, 393 N.W.2d 452 (S.D.1986); *Wallace v. Couch*, 642 S.W.2d 141 (Tenn.1982); *Wagner v. Flightcraft, Inc.*, 31 Wash.App. 558, 643 P.2d 906 (1982).

The defendants also cite a number of federal cases, however, most of those dealt with wrongful death claims under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1948 & amended 1988). *O'Connor v. United States*, 269 F.2d 578 (2d Cir.1959); *Martin v. United States*, 448 F.Supp. 855 (D.C.Ark.), *modified on other grounds*, 586 F.2d 1206 (1977); *Mays v. United States*, 608 F.Supp. 1476 (D.C.Colo.1985), *reversed on other grounds*, 806 F.2d 976 (10th Cir.1986), *cert. denied*, 482 U.S. 913, 107 S.Ct. 3184, 96 L.Ed.2d 673 (1987); *Cincotta v. United States*, 362 F.Supp. 386 (D.C.Md.1973); *Szimonisz v. United States*, 537 F.Supp. 147 (D.C.Or.1982). These cases do not discuss the state damage law. We find them not to be persuasive. The same is true of the several cases cited by defendants which deal with damages for the death of seamen under federal maritime law. *Complaint of the Connecticut Nat'l Bk. v. OMI Corp.*, 928 F.2d 39 (2d Cir.1991); *Petition of United States Steel Corp.*, 479 F.2d 489 (6th Cir.), *cert. denied sub nom., Fuhrman v. United States Steel Corp.*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); *Tiffany v. United States*, 726 F.Supp. 129 (W.D.Va.1989), *reversed on other grounds*, 931 F.2d 271 (4th

However, in reviewing these cases, we find that in most instances, the discussion in the cases of this issue is quite cursory. Often there is nothing more than a brief restatement of the rule without any analysis of its rationale or citation to other jurisdictions.[6] In some jurisdictions the wrongful death statute relating to damages expressly provides a deduction for personal expenses, *see,* e.g., *Air Florida, Inc. v. Hobbs,* 477 So.2d 40 (Fla.Dist.Ct.App.1985); *Romano v. Duke,* 111 R.I. 459, 304 A.2d 47 (1973),[7] or in the case of North Carolina use the term "[n]et income."[8] In most jurisdictions, the wrongful death statute as to the amount of damages to be awarded is quite general often utilizing only a standard of fair and just compensation for the pecuniary loss.[9] There

Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 867, 116 L.Ed.2d 773 (1992).

6. For example, in *Kulawik v. ERA Jet Alaska,* 820 P.2d at 629, the parties apparently agreed that damages are calculated by taking "future gross earnings and . . . subtracting the decedent's personal consumption." The issue was whether income taxes could be deducted. In *Lorenz v. Air Illinois, Inc.,* 168 Ill.App.3d at 1068–69, 522 N.E.2d at 1357–58, the personal consumption issue was mentioned only in an instruction that stated "spent for customary personal expenses." Contrary to defendants' assertions, the Michigan Supreme Court in *Miller v. State Farm Mutual Automobile Insurance Co.,* 410 Mich. at 565–70, 302 N.W.2d at 545–47, dealt with the issue under its No–Fault Insurance Act and concluded that a deduction for personal consumption was not required. Both the Mississippi and New Hampshire courts in 1922 considered the language in wrongful death damage instructions which permitted cost of living expenses to be deducted. Without any analyses, the instructions were approved. *See Louisville & N. R. Co. v. Garnett,* 129 Miss. 795, 806, 93 So. 241, 243 (1922); *Pitman v. Merriman,* 80 N.H. at 298–99, 117 A. at 19–20. The New Jersey Supreme Court in *Tenore v. Nu Car Carriers, Inc.,* 67 N.J. at 483, 341 A.2d at 622, did not address the issue except to criticize tables that calculated living expenses only on the basis of the decedent's pocket money expenditures. Finally, in *Jenkins v. Pennsylvania Railroad Co.,* 220 Pa.Super. at 457–58, 289 A.2d at 167, the court merely approved an instruction which allowed a deduction of "the probable cost of his maintenance."

7. Section 768.18(5) of the Florida Statutes (1990) defines net accumulations:

" 'Net accumulations' means the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of his estate if he had lived his normal life expectancy. 'Net business or salary income' is the part of the decedent's probable gross income after taxes, excluding income from investments continuing beyond death, that remains *after deducting the decedent's personal expenses* and support of survivors, excluding contributions in kind." (Emphasis added).

The most recent version of Section 10–7–1.1 of the General Laws of Rhode Island (1987) provides:

"Pecuniary damages to the beneficiaries described under § 10–7–2 and recoverable by such persons shall be ascertained as follows:

"(1) Determine the gross amount of the decedent's prospective income or earnings over the remainder of his life expectancy, including therein all estimated income he would probably have earned by his own exertions, both physical and mental. Pecuniary damages shall include the value of homemaker services lost as a result of the death of a homemaker. The fair value of homemaker services shall not be limited to moneys actually expended to replace the services usually provided by the homemaker. In such a suit, the value of homemaker services may be shown by expert testimony, but such testimony is not required.

"(2) Deduct therefrom the estimated personal expenses that the decedent would probably have incurred for himself, exclusive of any of his dependents, over the course of his life expectancy.

"(3) Reduce the remainder thus ascertained to its present value as of the date of the award. In determining said award, evidence shall be admissible concerning economic trends, including but not limited to projected purchasing power of money, inflation and projected increase or decrease in the costs of living."

8. Section 28A–18–2(b) of the General Statutes of North Carolina (1993) provides: "Damages recoverable for death by wrongful act include: . . . (4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the reasonably expected: a. Net income of the decedent[.]"

9. Typical of such wrongful death statutes are:

Ark.Code Ann. § 16–62–102(f)(1) (Michie 1993), in part: "[S]uch damages as will be fair and just compensation for pecuniary injuries[.]"

Del.Code Ann.Tit. 10 § 3724(d) (1982): "[T]he court or jury shall consider all the facts and circumstances and from them fix the award at such sum as will fairly compensate for the injury resulting from the death."

Mich.Comp.Laws § 600.2922(6) (1985), in part: "[T]he court or jury may award damages as the court or jury shall consider fair and equi-

is no statutory language that speaks to recovery of lost earnings in many of these statutes. As a consequence, the courts in those jurisdictions are accorded considerable flexibility in determining the elements of damages that may be recovered and any limitations by way of deductions.

On the other hand, our wrongful death statute is quite detailed as to the various categories of damages that may be awarded. *See* W.Va.Code, 55–7–6(c) (1992).[10] In particular, it allows for "compensation for reasonably expected loss of (i) income of the decedent[.]" W.Va.Code, 55–7–6(c)(1)(B)(i). We traditionally have stated that the elements of damages in a wrongful death action and their manner of distribution are governed by our statute. *See Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991); *Bond v. City of Huntington*, 166 W.Va. 581, 276 S.E.2d 539 (1981). In *Bond, supra*, we discussed our earlier cases that had added various damage components to our wrongful death statute. We determined that punitive damages could be recovered even though the statute did not specifically authorize them and came to this conclusion in Syllabus Point 1 of *Bond:*

> "Not only has the Legislature liberalized the wrongful death recovery statute through the years, but this Court has adopted a liberal construction of the statute from our earliest cases."

In the absence of any clear legislative language, we refuse to construe the phrase "reasonably expected loss of ... income of the decedent," in W.Va.Code, 55–7–6(c)(1)(B)(i), to mean "net income." We, therefore, hold that the language of W.Va. Code, 55–7–6(c)(1)(B)(i), that allows as part of the elements of damages in a wrongful death action compensation for reasonably expected loss of income of the decedent, does not require a deduction for estimated personal living expenses.

## V.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Monongalia County against Matthew Kiser and Bossio Enterprises, Inc., dba Mario's Pizza, but we reverse the judgment against Sigma Phi Epsilon, a national fraternal organization and association, and Sigma Phi Epsilon Building Association, Inc., a corporation.

Affirmed, in part, and reversed, in part.

---

table, under all the circumstances ... and damages for the loss of financial support and the loss of the society and companionship of the deceased[.]"

N.J.Rev.Stat. § 2A:31–5 (1968), in part: "In every action brought under the provisions of this chapter the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death[.]"

N.Y.Est.Powers & Trusts Law § 5–4.3(a) (McKinney 1986), in part: "The damages awarded to the plaintiff may be such sum as the jury or ... the court or referee deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought."

S.D.Codified Laws Ann. § 21–5–7 (1967): "In every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought."

Tex.Civ.Prac. & Rem.Code Ann. § 71.010(a) (1985): "The jury may award damages in an amount proportionate to the injury resulting from the death[.]"

Wash.Rev.Code § 4.20.020 (1985), in part: "In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just."

10. The text of W.Va.Code, 55–7–6(c), states:

"(1) The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses."