# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

The Eric S. Gordon Trust,
Scott Gordon, Trustee,
Plaintiff Below, Petitioner

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs)  No. 16-0641  (Kanawha County 12-C-122)

The West Virginia Municipal League,
Defendant Below, Respondent


## MEMORANDUM DECISION

Petitioner The Eric S. Gordon Trust, Scott Gordon, Trustee, by counsel I. Franklin Hartman, III, appeals the Circuit Court of Kanawha County's June 9, 2016, order granting summary judgment to respondent in petitioner's action for negligence related to investments petitioner made through Comvest Ltd., Inc., some of which were through a lease/purchase program advertised by respondent. Respondent The West Virginia Municipal League, by counsel Molly Underwood Poe, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a special needs trust created in 1973 by Sylvia Gordon, the mother of Eric S. Gordon, to provide for the care and maintenance of Eric during his lifetime. Since Ms. Gordon's death, Scott Gordon, Eric's brother, has been the trustee of that trust. Petitioner has made various investments, including some leases and purchases through the "West Virginia Municipal League's Lease/Purchase Program." That program was created and maintained through a contractual agreement between Comvest Ltd., Inc. ("Comvest") and the West Virginia Municipal League Insurance Trust Fund Board on behalf of respondent. Comvest was a financial services company that filed for bankruptcy prior to petitioner initiating the underlying suit.

Petitioner filed the underlying civil action against respondent on January 20, 2012, alleging that respondent's sponsorship, marketing, and endorsement of the lease/purchase program was performed in a negligent matter and that respondent breached its duty to use due care to its members and the investing public in selecting, sponsoring, advertising, and endorsing Comvest in a lease/purchase program. According to petitioner's complaint, Comvest routinely arranged equipment lease/purchase agreements between investors and municipalities and then

1

assigned those leases to financial institutions and individual investors. Comvest used the investor's funds to purchase the equipment for a government entity, and the government entity would make direct payments to the individual investor who fronted the funds to Comvest. Petitioner also alleged that "[m]any of the government agencies in the lease/purchase agreements were members of the Municipal League."[1] Pursuant to the arrangement between petitioner and Comvest, petitioner was to provide the funding necessary to purchase the goods that were the subject of the lease/purchase agreements for the entities and would receive periodic payments as the assignee of Comvest. Petitioner provided the funds to Comvest, but Comvest failed to purchase the goods. Instead, it converted petitioner's funds to its own use. Petitioner's sole allegation against respondent is negligence.

Respondent filed a motion to dismiss petitioner's complaint, though the circuit court converted that motion to a motion for summary judgment. The circuit court granted that motion by order entered on June 9, 2016. In that order, the circuit court found that in West Virginia pure economic damages caused by another's negligence without physical harm are not recoverable in tort without a contractual relationship or a special relationship sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor. *See* Syl. Pt. 9, *Aikens v. Debow*, 208 W. Va. 486, 541 S.E.2d 576 (2000). The circuit court further determined that petitioner and respondent had no relationship, specifically finding that respondent had no contact whatsoever with petitioner, was not a party to any of the five contracts between Comvest and petitioner, and performed no special services on behalf of petitioner that would differentiate it from "other members of society" or other individuals or entities who availed themselves of the investment opportunities Comvest was offering. Based on those findings, the circuit court concluded that no special relationship existed between petitioner and respondent that could give rise to a duty which would impose liability on respondent.

Petitioner also asserted below that respondent had a fiduciary duty to the "investor public." However, the circuit court found that respondent did not assume or accept a duty to act for petitioner, so petitioner's claim that respondent breached certain fiduciary duties fails as a matter of law. The circuit court went on to find that respondent also did not proximately cause petitioner's damages. It further stated that "it is undisputed that Comvest's act of fraudulently converting [petitioner's] funds to its own use was a criminal act. . . Accordingly, absent willful or wanton conduct on the part of [respondent], Comvest's criminal act is a superseding intervening act that breaks the chain of causation and [petitioner's] negligence claim should be dismissed as a matter of law." The circuit court, however, recognized that while neither party had been able to locate a signed contract between respondent and Comvest, it is undisputed that such

---

[1] According to the complaint, the following investments are at issue: (a) Town of Paw, January 28, 2010, for $12,870; (b) Town of Paw, January 28, 2012, for $10,900; (c) Town of Handley Sanitary Board, January 7, 2007, for $20,850; (d) Harts Volunteer Fire Department, March 2, 2010, for $31,000; and (e) Cora Volunteer Fire Department, January 20, 2010, for $11,000. Petitioner asserts that Comvest accepted funds from it for these five investments but did not obtain the equipment.

contract existed.[2] The circuit court set forth some of the relevant details of that contract, including that it specifically states that the purpose of the lease/purchase program is to "provide the member of [respondent]" with a direct source or unrated lease/purchase and other financings for any equipment or facilities that may have been determined to be essential to the operations of its members. The contract further provided that respondent's role was to "promote the Program through sponsorship of educational seminars, distribution for marketing materials and arranging contacts between interested Members [of respondent] and Comvest." The circuit court determined that respondent fulfilled its contractual role of determining eligibility by providing Comvest with a copy of respondent's membership directory, providing a link to the lease/purchase program on respondent's website, allowing Comvest ad space in respondent's newsletter when requested, and allowing Comvest booth space at respondent's seminars. The circuit court determined that respondent did not, however, field applications, screen applications for eligibility, or actually arrange contracts between Comvest and any of the member municipalities.

Upon review of the evidence, the circuit court found that Scott Gordon had been investing in Comvest lease/purchase agreements since at least 2003 and that a significant portion of the leases petitioner invested in had nothing to do with respondent. In addition, two of the five leases at issue were not lease/purchase agreements arising out of the lease/purchase program sponsored by respondent, as the two fire departments at issue are not members of respondent. The circuit court concluded that petitioner's claim that respondent and Comvest were engaged in a joint venture fails as a matter of law because there is no evidence that respondent had any control over Comvest's relationship with "its investors, generally or the Eric Gordon trust, specifically." Petitioner appeals from that order.

This Court has long held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Petitioner presents a single assignment of error: the circuit court erred in granting summary judgment because there existed genuine issues of material fact regarding a joint venture between respondent and Comvest. In support of that alleged error, petitioner argues that the agreement between respondent and Comvest required respondent to arrange contacts between interested members and Comvest, receive applications for participation in the program, make a preliminary determination of eligibility, and forward applications to Comvest for processing. Comvest was required to provide respondent with a monthly accounting of all leases and other financings closed or completed. If an agreement was reached with a member and the lease/purchase or other financing agreement was executed and placed, Comvest was to pay a royalty fee to respondent ranging from 20-25% of the net fee. Petitioner argues that the terms of the contract evidence respondent's right to control Comvest's conduct in the program, as required to establish the existence of a joint venture. Petitioner also points to the deposition testimony of Lisa Dooley, Executive Director of respondent, wherein she testified that both parties received financial benefits from the lease/purchase program and that respondent provided booth space at its

---

[2] The parties do not appear to dispute the accuracy of the unsigned contract addressed by the circuit court and herein.

3

meetings to Comvest to advertise and market that program.[3]

Respondent, however, argues that it owed no duty to petitioner as a matter of law, pursuant to *Aikens*. In that case, we found that

> [t]he determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law.

Syl. Pt. 5, *id.* With regard to such special duty, this Court stated therein as follows:

> The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

*Id.* at 499, 541 S.E.2d at 589.

Based on the specific facts of this case, we agree with respondent that it owed no duty to petitioner as a matter of law. Petitioner does not dispute respondent's contention that the two had no contact. Further, respondent was not a party to any of the five contracts between Comvest and petitioner and performed no special services on behalf of petitioner that would differentiate it from other members of society or other individuals or entities who availed themselves of the investment opportunities Comvest was offering. Additionally, petitioner's investments through Comvest's lease/purchase agreements were not limited to investments under respondent's lease/purchase program. In the first eight months of 2006, petitioner funded over twenty-five leases, and eleven of those were not related in any way to respondent. It is also undisputed that two of the five leases at issue in the instant action also did not arise out of the lease/purchase program at issue because the entities were not members of respondent. For these reasons, we find that respondent owed no duty to petitioner as a matter of law.[4] Based on this lack of duty, we

---

[3] Petitioner also directs this Court to the fact that Jim Christie acted simultaneously as an elected officer of the Board of Directors of respondent and as a principal and founding member of Comvest. It contends that Mr. Christie's dual roles in both organizations provides further factual support to its contention that a joint venture existed between the parties; it further creates additional material facts related to respondent's control over Comvest, including the imputed knowledge of respondent with regard to Comvest's wrongful conduct. However, those allegations are not dispositive of this matter.

[4] Petitioner fails to address respondent's contention that Comvest's fraudulent conversion (continued . . .)

4

affirm the circuit court's grant of summary judgment to respondent.

Affirmed.

**ISSUED:** January 5, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis
Justice Margaret L. Workman

---

of petitioner's funds constitutes an intervening, superseding cause which proximately caused petitioner's damages. While it is not dispositive of this case, we note that this Court has found,

> """[a]n intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." Syllabus Point 16, *Lester v. Rose,* 147 W.Va. 575, 130 S.E.2d 80 (1963) [*modified on other grounds, State ex rel. Sutton v. Spillers,* 181 W.Va. 376, 382 S.E.2d 570 (1989) ].' Syllabus Point 1, *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8 (1982)." Syllabus point 3, *Wehner v. Weinstein,* 191 W.Va. 149, 444 S.E.2d 27 (1994).

Syl. Pt. 12, *Riffe v. Armstrong*, 197 W. Va. 626, 477 S.E.2d 535 (1996).